## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

Pamela Kilty, Individually and as Special
Administrator of the Estate of Elvira Kilty,
Paul J. Kilty,
David L. Kilty,
William J. Kilty, and
James S. Kilty

                           Plaintiffs,

             v.

Weyerhaeuser Company, *a corporation;*
3M Company, *a corporation*;
Metropolitan Life Insurance Company*, a corporation*;
Owens-Illinois, Inc., *a corporation*;
Unknown Insurers of Owens-Illinois, Inc., *a corporation;*
Unknown Insurers of Roddis Plywood Corporation, *a corporation;*
Unknown Insurers of Weyerhaeuser Company, *a corporation;*

                     Defendants.

Case No._____

## COMPLAINT

Plaintiffs Pamela Kilty, individually and as special administrator of the estate of Estate of Elvira Kilty, Paul J. Kilty, David L. Kilty, William J. Kilty, and James S. Kilty, complain against defendants Weyerhaeuser Company, 3M Company, Metropolitan Life Insurance Company, Owens-Illinois, Inc., Unknown Insurers of Owens-Illinois, Inc., Unknown Insurers of Roddis Plywood Corporation, and Unknown Insurers of Weyerhaeuser Company as follows.

## JURISDICTION AND PARTIES

1

1.      Plaintiffs Pamela Kilty is a lineal heir of decedent Elvira Kilty, the duly appointed special administrator of the estate of Elvira Kilty, and a resident of Spencer, Wisconsin. Pamela Kilty brings this action individually and on behalf of the estate of decedent.

2.      Decedent Elvira Kilty died in the state of Wisconsin on September 1, 2015.   At the time of her death, decedent was an adult citizen and resident of Spencer, Wisconsin.

3.      Plaintiffs Paul J. Kilty, David L. Kilty, William J. Kilty, and James S. Kilty are lineal heirs of Elvira Kilty and reside in the state of Wisconsin.

4.      Defendant Weyerhaeuser Company ("Weyerhaeuser") is the former owner of the Marshfield, Wisconsin door manufacturing plant ("Marshfield plant") where asbestos fireproofing products were manufactured and asbestos containing products were used in manufacturing production.   Weyerhaeuser is incorporated under the laws of and has its principal place of business in the state of Washington.   Weyerhaeuser is legally responsible for the conduct of Roddis Plywood Corporation, the former owner and operator of the Marshfield plant.

5.      Defendant 3M Company ("3M") designed, manufactured, and sold masks for personal breathing protection in occupational settings, including without limitation the 3M 8710. 3M is incorporated under the laws of the state of Delaware and has its principal place of business in the state of Minnesota.

6.      Defendant Metropolitan Life Insurance Company ("MetLife") conspired and acted to conceal information about the health hazards of asbestos from both individual end-users and industry. MetLife is incorporated under the laws of the state of Delaware and has its principal place of business in the state of New York.

7.      Defendant Owens-Illinois, Inc. ("OI") designed, owned, and sold licenses for a patent for the manufacture of fire doors incorporating asbestos-containing cores.   OI also manufactured, sold, and designed asbestos products, including without limitation fire door cores.   The brand name "Kaylo" was associated with both the patented doors and the cores.   OI is incorporated under the laws of the state of Delaware and has its principal place of business in the state of Ohio.

8.      Unknown Insurers of Owens-Illinois, Inc. are named pursuant to Wis. Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the Plaintiffs.

9.      Unknown Insurers of Roddis Plywood Corporation are named pursuant to Wis. Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the Plaintiffs.

10.     Unknown Insurers of Weyerhaeuser Company are named pursuant to Wis. Stats. §803.04(2)(a) as they have an interest in the outcome adverse to the Plaintiffs.

11.     Jurisdiction is based on diversity of citizenship of the parties hereto under Title 28, United States Code, §1332.

12.     The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

13.     Venue is proper pursuant to Title 28, United States Code, §1391.


## GENERAL ALLEGATIONS

14.     The Marshfield plant manufactured asbestos containing fire doors beginning in 1955 and continuing through 1979.   Beginning in 1968, manufacture of asbestos containing cores for fire doors was added as a part of the Marshfield plant operations. The manufacturing

operations included disposal of the dust and scrap waste generated from manufacture of the doors.

15. Decedent inhaled airborne asbestos fibers released as a result of operations at the Marshfield plant from the following sources:

    a.    fibers released inside the Marshfield plant where she was employed from about 1955-1994;

    b.    asbestos fibers transported outside the plant beginning in 1955 by employees or other persons on the plant premises which contaminated homes, autos, and other locations outside the plant which decedent breathed while residing in the Marshfield area since birth;

    c.    emissions of asbestos dust beginning in 1955 into the community air of Marshfield which decedent breathed while residing in the Marshfield area since birth.

16. During the period of the exposures, decedent did not understand or know how to protect against the dangerous nature of asbestos, including without limitation the presence of or risks of asbestos in settings outside the plant.

17. As a direct and proximate result of the conduct of Defendants, decedent suffered from asbestos related diseases, including without limitation mesothelioma diagnosed on July 16, 2015.

18. The injury from asbestos fibers begins soon after inhalation, but signs and symptoms used to diagnose asbestos related disease do not manifest until many years or decades later.

19. Decedant's cumulative exposures to asbestos contributed to and caused the decedent's asbestos related conditions.

20.    As a result of the asbestos related diseases, decedent died on September 1, 2015.

21.    The death certificate filed September 9, 2015, reports the cause of death as "malignant

mesothelioma."

22.    Decedent suffered great pain, physical impairment, and great mental pain and anguish. She

is liable for large sums of money for medical and hospital care, and suffered losses to her

personal property and possessions. Further, as a result of decedent's death, funeral,

cemetery, and related expenses and costs have been incurred.

23.    At all times, the lineal heirs were children of decedent and were enjoying her services,

companionship, society and relationship.

24.    As a result of decedent's disease and her resulting death, her lineal heirs have suffered

pecuniary losses and have suffered and will suffer in the future a loss of society and

companionship with decedent.

25.    As a direct and proximate result of the one or more of the wrongful acts or omissions of the

defendants, Plaintiffs

a.    have been deprived of decedent's services, companionship, society, and
       relationship from the time of her injury;

b.    have been hindered and prevented from transacting and attending to their usual
       business and personal affairs.

26.    Pamela Kilty brings claims on behalf of the estate of decedent as a survival action pursuant

to Wisconsin law.   Plaintiffs bring their individual claims as a wrongful death action

pursuant to Wis. Stat. § 895.04.


## COUNT I - PRODUCT LIABILITY - NEGLIGENCE

5

27.   Plaintiffs bring this claim for negligence and restate and re-allege the allegations in
      paragraphs 1 – 26 above.

28.   Plaintiffs bring this claim against OI and unknown insurers of OI for

a.    the manufacture and sale of asbestos-containing door cores, and

b.    design, licensing and/or patenting of the process to make asbestos-containing doors.

29.   The term "Kaylo fire doors" is used to refer to the OI design for producing doors and cores
      sold by OI are referred to as Kaylo cores.

30.   Pursuant to a written agreement, OI was paid a royalty for each Kaylo fire door produced
      pursuant to the patented design process. OI also sold asbestos-containing door cores to the
      Marshfield plant which were used during the years 1955-1958.

31.   It was reasonably foreseeable to OI that Plaintiffs and other workers working in or in
      proximity to Kaylo fire door production operations at Weyerhaeuser would inhale asbestos
      fibers released from the Kaylo fire doors during the production process pursuant to the OI
      design.

32.   OI knew or in the exercise of ordinary or reasonable care ought to have known asbestos
      causes serious and fatal disease, contaminates the surrounding air in communities, and is
      transported into households, vehicles and other settings outside the plant.   OI had a duty to
      exercise reasonable care for the safety of the deceased Plaintiffs and others from these
      conditions.

33.   OI breached its duty of care and was negligent, including without limitation in one or more
      of the following acts or omissions:

      a.    Failed to adequately warn Plaintiffs or others of the health hazards of asbestos
            associated with process of producing Kaylo fire doors and use of Kaylo cores;

b.     Failed to investigate or test for the health effects of asbestos in process of producing Kaylo fire doors and use of Kaylo cores;

c.     Failed to instruct decedent, her employers, patent licensees, or others in the use of precautionary measures relating to airborne asbestos fibers released during the process of producing of Kaylo fire doors and use of Kaylo cores;

d.     Defectively designed the Kaylo fire cores and process for producing the doors to incorporate asbestos as an ingredient or material in their production when substitute materials were available.

34.     As a direct and proximate result of the acts and omissions of the defendants above, the decedent and Plaintiffs were injured as described above.

## COUNT II – COMMON LAW NEGLIGENCE –

## ASBESTOS FIBERS TRANSPORTED OR EMITTED OUTSIDE THE PLANT

35.     Plaintiffs incorporate by reference all general allegations above and brings this count against defendant Weyerhaeuser for negligence in causing transport and emission of asbestos fibers outside the plant.

36.     As a result of the operations of Weyerhaeuser's Marshfield plant, asbestos fibers were transported and emitted to areas outside the plant by:

a.   worker clothing, personal effects, hair, and skin which had become contaminated by asbestos fibers at the plant; and

b.   collecting, removing, hauling, and dumping asbestos dust and waste materials.

7

37. The plant emissions and transport of asbestos fibers as described above caused contamination of housing, vehicles, community businesses, and other places outside the plant frequented by decedent.

38. Decedent inhaled asbestos fibers from the contaminated property outside the plant

39. The inhalation outside the plant occurred when activities were being performed by decedent or other persons, including without limitation other household members or guests, that were not part of "performing service growing out of and incidental to decedent's employment" for Roddis or Weyerhaeuser within the meaning of Wis Stat. §102.03(c).

40. Weyerhaeuser owned and operated the door manufacturing plant in Marshfield during the period of decedent's exposures caused by fibers transported or emitted from the plant.

41. Weyerhaeuser operated the Marshfield plant without adequately controlling transport and emission to other locations of asbestos fibers.

42. Weyerhaeuser knew or in the exercise of ordinary or reasonable care ought to have known the Marshfield plant operations resulted in emission and transport of asbestos fibers to locations outside the plant.

43. When the fibers were being emitted or transported, Weyerhaeuser knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and death.

44. Weyerhaeuser Company had a duty to exercise reasonable care for the safety of decedent from asbestos fibers transported or emitted to other locations outside the plant as a result of plant operations.

45. Weyerhaeuser breached its duty of care to prevent emissions and transport of asbestos fibers outside the plant, including without limitation in one or more of the following acts or omissions:

    a. Failed to adequately warn decedent or others of the health hazards of asbestos;

    b. Failed to adequately investigate health effects of asbestos;

    c. Failed to adequately test for air levels of asbestos;

    d. Failed to adequately instruct persons in the use of precautionary measures relating to airborne asbestos fibers;

    e. Failed to adequately warn persons to prevent or protect against fibers emitted or transported outside the plant;

    f. Failed to instruct persons about precautionary measures to prevent or protect against fibers emitted or transported outside the plant;

    g. Failed to install adequate dust collection systems or implement adequate procedures to prevent or protect against fibers emitted or transported outside the plant;

    h. Failed to use proper engineering controls or methods, or used unsafe techniques or methods, in collecting, removing, hauling, and dumping of asbestos-containing waste and scrap materials and dust;

    i. Failed to properly and timely maintain dust collection systems when breakdowns or failures occurred;

    j. Failed to investigate the health hazards of fibers transported or emitted outside the plant;

k.  Used defectively designed asbestos-containing door core products when substitutes were available;

l.  Utilized a formula for manufacturing door cores which included asbestos fibers as an ingredient when substitutes were available;

m.  Caused visible emissions of asbestos fibers from plant operations in violation of professional standards for industrial hygiene and environmental safety;

n.  Violated agency regulations issued pursuant to the United States Occupational Safety and Health Act, 29 U.S.C. §651, et seq.;

o.  Violated other agency regulations, including without limitation the United States Environmental Protection Agency National Emission Standards for Hazardous Air Pollutants, adopted originally as Part 61, Chapter 1, Title 40 of the Code of Federal Regulations effective on April 6, 1971;

p.  Violated regulations issued by the Wisconsin Industrial Commission, including without limitation General Orders on Dusts, Fumes, Vapors and Gases, Order 2002 and Wis. Adm. Code Ind. 12.20;

q.  Exceeded other air quality standards or guidelines, including without limitation the Wisconsin Division of Natural Resources and Threshold Limit Values of the American Conference of Governmental Industrial Hygienists;

r.  Failed to take adequate corrective action to prevent transport and emission of asbestos fibers outside the plant after being put on notice that such emissions and transport was occurring.

10

46.   As a direct and proximate result of the defendant's negligence, decedent and Plaintiffs were injured as described above.

## COUNT III – NEGLIGENT NUISANCE

47.   Plaintiffs incorporate by reference all general allegations above and brings this count against defendant Weyerhaeuser for negligent public and private nuisance.

48.   As a result of the operations of Weyerhaeuser's Marshfield plant, asbestos fibers were transported and emitted to areas outside the plant by:

a.   worker clothing, personal effects, hair, and skin which had become contaminated by asbestos fibers at the plant;

b.   collecting, removing, hauling, and dumping asbestos dust and waste materials.

49.   The plant emissions and transport of asbestos fibers as described above caused contamination of housing, vehicles, community businesses, and other places outside the plant frequented by decedent.

50.   Decedent inhaled asbestos fibers from the contaminated property outside the plant.

51.   The inhalation occurred when activities were being performed by decedent or other persons, including without limitation other household members or guests, that were not part of service growing out of and incidental to decedent's employment with Roddis or Weyerhaeuser;

52.   Weyerhaeuser owned and operated the door manufacturing plant in Marshfield during the period of decedent's exposures caused by fibers transported or emitted outside the plant.

53.     Weyerhaeuser knew or in the exercise of ordinary or reasonable care ought to have known
        the Marshfield plant operations resulted in emission and transport of asbestos fibers to
        locations outside the plant.

54.     When the fibers were being emitted or transported, Weyerhaeuser knew or in the exercise
        of ordinary or reasonable care ought to have known asbestos causes disease and/or death

55.     Weyerhaeuser's conduct causing the contamination by the asbestos fibers is an
        unreasonable interference with a right common to the general public to clean air.

56.     Weyerhaeuser's conduct causing the contamination by the asbestos fibers is an
        unreasonable interference with decedent's private rights, including the right to use and
        enjoy private property.

57.     Weyerhaeuser permitted the Marshfield plant operations to continue without adequately
        controlling, abating, or remediating the release of asbestos fibers outside the plant.

58.     Weyerhaeuser's conduct causing the nuisance included without limitation the following
        acts or omissions:

        a.   Failed to adequately warn decedent or others of the health hazards of asbestos;

        b.   Failed to adequately investigate health effects of asbestos;

        c.   Failed to adequately test for air levels of asbestos;

        d.   Failed to adequately instruct persons in the use of precautionary measures relating to
             airborne asbestos fibers;

        e.   Failed to adequately warn persons to prevent or protect against fibers emitted or
             transported outside the plant;

        f.   Failed to instruct persons about precautionary measures to prevent or protect against

fibers emitted or transported outside the plant;

g.   Failed to install adequate dust collection systems or implement adequate procedures to prevent or protect against fibers emitted or transported outside the plant;

h.   Failed to use proper engineering controls or methods, or used unsafe techniques or methods, in collecting, removing, hauling, and dumping of asbestos-containing waste and scrap materials and dust;

i.   Failed to properly and timely maintain dust collection systems when breakdowns or failures occurred;

j.   Failed to investigate the health hazards of fibers transported or emitted outside the plant;

k.   Used defectively designed asbestos-containing door core products when substitutes were available;

l.   Utilized a formula for manufacturing door cores which included asbestos fibers as an ingredient when substitutes were available;

m.   Caused visible emissions of asbestos fibers from plant operations in violation of professional standards for industrial hygiene and environmental safety;

n.   Violated agency regulations issued pursuant to the United States Occupational Safety and Health Act, 29 U.S.C. §651, et seq.;

o.   Violated other agency regulations, including without limitation the United States Environmental Protection Agency National Emission Standards for Hazardous Air Pollutants, adopted originally as Part 61, Chapter 1, Title 40 of the Code of Federal Regulations effective on April 6, 1971;

13

p.   Violated regulations issued by the Wisconsin Industrial Commission, including without limitation General Orders on Dusts, Fumes, Vapors and Gases, Order 2002 and Wis. Adm. Code Ind. 12.20;

q.   Exceeded other air quality standards or guidelines, including without limitation the Wisconsin Division of Natural Resources and Threshold Limit Values of the American Conference of Governmental Industrial Hygienists;

r.   Failed to take adequate corrective action to prevent transport and emission of asbestos fibers outside the plant after being put on notice that such emissions and transport was occurring.

59.   The asbestos fibers caused special injury of asbestos related disease to decedent Elvira Kilty.

60.   The contamination by asbestos fibers from the Marshfield plant operations:

a.   Adversely affected the health interests of the community at large;

b.   Interfered with the public health and safety;

c.   Interfered with the right of decedent to enjoyment and use of private property as a family member by causing injury while decedent was occupying the property.

61.   As a direct and proximate result of the nuisance, decedent and Plaintiffs were injured as described above.


**COUNT IV – INTENTIONAL NUISANCE**

62.   Plaintiffs bring this count against defendant Weyerhaeuser for intentional public and private nuisance.

14

63.     Plaintiffs re-allege and incorporate by reference all general allegations above and the allegations in paragraphs 56-69.

64.     Weyerhaeuser knew the transport or emission of asbestos fibers outside the plant was occurring or substantially certain to occur as a result of the alleged conduct.

65.     The conduct of Weyerhaeuser created an intentional nuisance.

66.     As a direct and proximate result of the nuisance, decedent and Plaintiffs were injured as described above.

## COUNT V– PRODUCTS LIABILITY MASKS – STRICT LIABILITY

67.     Plaintiffs bring this claim for strict liability against defendant 3M.

68.     Plaintiffs restate and incorporates the allegations set forth in the general allegations above.

69.     Defendant was at all relevant times in the business of selling personal protective equipment, including without limitation masks.

70.     Defendants knew and expected the masks would be used to protect against the inhalation of asbestos fibers.

71.     Defendant placed its masks into the stream of commerce with the expectation that they would reach Plaintiffs and other users and consumers without substantial change in the condition they were in when they left the possession or control of defendants.

72.     Defendant's masks reached decedent without substantial or unforeseeable change in the condition in which it was sold.

73.     Decedent used defendant's masks in the condition in which they left the possession or control of such defendants.

15

74.     The masks were defective in failing to properly protect against inhalation of asbestos fibers from the operations at the Marshfield facility.

75.     Defendant's masks was defective and unreasonably dangerous at the time it left the possession or control of defendants in one or more of the following ways:

   a.   Failed to adequately warn decedent or others of the health hazards of asbestos which existed when wearing defendant's masks;

   b.   Failed to investigate or test for the effectiveness of the masks in preventing the inhalation of asbestos fibers;

   c.   Failed to instruct decedent, her employers, or others about the inadequacies of using the masks as precautionary measures against airborne asbestos fibers;

   d.   Defectively designed such that the masks did not adequately protect against or prevent exposure to asbestos fibers;

   e.   Failed to specify or instruct in the proper use of the mask.

76.     As a direct and proximate result of the acts and omissions of the 3M above, decedent and Plaintiffs were injured as described above.


## COUNT VI – PRODUCTS LIABILITY MASKS – NEGLIGENCE

77.     Plaintiffs bring this claim for negligence against defendant 3M.

78.     Plaintiffs restate and incorporates the allegations set forth in the general allegations and in paragraphs 76-84 above.

79.     It was reasonably foreseeable that defendant's personal protective masks would be used to

prevent exposure to asbestos.

80. Defendants knew and expected the masks would be used to protect against the inhalation of asbestos fibers.

81. Defendants represented or held out the masks to be adequate in the protection against inhalation of asbestos fibers during the type of operations at the Marshfield plant.

82. The masks did not properly protect against inhalation of asbestos fibers from the operations at the Marshfield facility.

83. Defendant had a duty to exercise reasonable care for the safety of Plaintiffs and others who used defendant's personal protective equipment to protect against exposure to asbestos fibers.

84. Defendant knew or in the exercise of ordinary or reasonable care ought to have known asbestos causes disease and/or death.

85. Defendant breached its duty of care and was negligent, including without limitation in one or more of the following acts or omissions:

   a. Failed to adequately warn decedent or others of the health hazards of asbestos which existed when wearing defendant's masks;

   b. Failed to investigate or test for the effectiveness of the masks preventing the inhalation of asbestos fibers;

   c. Failed to instruct decedent, her employers, or others about the inadequacies of using the masks as precautionary measures against airborne asbestos fibers;

   d. Defectively designed its personal protective equipment such that it did not adequately protect against or prevent exposure to asbestos fibers;

e.   Failed to specify or instruct in the proper use of the masks.

86.   As a direct and proximate result of the acts and omissions of 3M, decedent and Plaintiffs were injured as described above.

## COUNT VII – CIVIL CONSPIRACY

87.   Plaintiffs bring this cause of action for civil conspiracy against defendant Metropolitan Life Insurance Company.

88.   Plaintiffs restate and re-allege the allegations set forth in lines 1 – 86 above.

89.   Defendant Metropolitan Life and other unnamed co-conspirators knowingly and willfully combined, agreed, and conspired with each other for the purpose of accomplishing one or more of the following unlawful purposes:

a.   Suppressing information about the health hazards of asbestos, including medical and scientific data, from those persons who would be exposed to the asbestos from the products made and sold by the conspirators;

b.   Affirmatively asserting, in a manner not warranted by the information possessed by the conspirators, claims that the conspirators knew were false, namely, that it was safe to work with and in close proximity to asbestos.

90.   One or more of the conspirators, including Metropolitan Life, performed the following tortious acts in furtherance of the conspiracy:

a.   Failed to warn about health hazards of asbestos; failed to investigate health hazards of asbestos;

interfered with scientific and medical studies about the health hazards of asbestos;

b.   failed to instruct about precautionary measures required for protection.

91.   As a direct and proximate result of the acts of the conspiracy described above, decedent and Plaintiffs was injured as described above.

## PUNITIVE DAMAGES

92.   Defendants acted maliciously, with intentional disregard for the rights of the decedent for which Plaintiffs are entitled to recover punitive damages.

## COUNT VIII - DECLORATORY JUDGMENT – UNCONSTITUTIONAL

93.   In 1995 Wisconsin enacted Act 17 which created restrictions on recoveries by victims of personal injuries.

94.   In 2011 Wisconsin enacted Act 2 which created restrictions on recoveries by victims of personal injuries.

95.   Plaintiffs seek a declaration that retroactive application of 1995 Act 17 and 2011 Act 2 to limit the recovery in this case is unconstitutional.

96.   On March 27, 2014 Wisconsin enacted 2013 Act 154 which imposes requirements and creates restrictions on victims of asbestos-related injuries.

97.   Plaintiffs seek a declaration that 2013 Act 154 is not applicable to this case or, in the alternative, that the requirements and restrictions it creates are unconstitutional.

## PRAYER FOR RELIEF

Plaintiffs pray for relief as follows:

19

a. Judgment against defendants, jointly and severally, for compensatory and general damages;

b. Punitive damages in an amount to be determined against each defendant;

c. A declaration that 1995 Act 17 and 2011 Act 2 are unconstitutional as applied to this case;

d. A declaration that 2013 Act 154 is not applicable to this case, or, in the alternative, that the requirements and restrictions it creates are unconstitutional;

e. Such further legal and equitable relief as the court orders to do justice in this case, including without limitation award of costs and disbursements of this action.

## **JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by a jury.

Dated: July 19, 2016

   /s/ Robert G McCoy
Attorney for Plaintiffs

Robert G. McCoy, SBN 1054014
Cascino Vaughan Law Offices, Ltd.
220 S. Ashland Avenue
Chicago, Illinois 60607
Phone: 312.944.0600
Fax: 312.944.1870
Email1: ecf.cvlo@gmail.com
Email2: bmccoy@cvlo.com