# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN
### MADISON DIVISION

| | |
|---|---|
| **PAMELA KILTY, Individually and as Special Administrator of the Estate of ELVIRA KILTY, Deceased, PAUL J. KILTY, DAVID L. KILTY, WILLIAM J. KILTY, and JAMES S. KILTY,** ) ) ) ) ) ) | |
| **Plaintiffs,** ) | **Case No. 3:16-cv-00515-wmc** |
| ) | |
| **v.** ) | |
| ) | |
| **WEYERHEAUSER COMPANY, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT WEYERHAEUSER COMPANY'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

LEGAL STANDARD............................................................................................. 1

ARGUMENT ......................................................................................................... 2

    I.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE WISCONSIN WORKER'S COMPENSATION ACT. ................................................. 3

        A.    The Seventh Circuit Court of Appeals explicitly affirmed the decisions of this Court. ............................................................. 3

        B.    There is no remedy for Plaintiffs under the Wisconsin Workers' Compensation Act.......................................................................... 5

        C.    Plaintiffs' claims against Weyerhaeuser are outside the parameters of the Wisconsin Workers' Compensation Act. ......................................... 6

        D.    The California and Washington case law set forth by Weyerhaeuser is distinguishable from the facts of this matter. ............... 10

        E.    Plaintiffs' allegations against other defendants regarding Ms. Kilty's occupational exposures do not bring Plaintiffs' allegations against Weyerhaeuser based on non-occupational exposures within the WCA. ................................................................................ 13

        F.    The dual persona exception is inapplicable to the facts of this case......... 14

    II.    RISKS OF NON-OCCUPATIONAL EXPOSURE PRIOR TO 1965 ................. 16

    III.    ELVIRA KILTY'S NON-OCCUPATIONAL EXPOSURES WERE A SUBSTANTIAL CONTRIBUTING FACTOR .................................................. 18

    IV.    PLAINTIFFS' PUBLIC NUISANCE CLAIMS .................................................. 19

        A.    Plaintiffs' public nuisance claims are not barred by the statute of limitations. ................................................................................ 19

        B.    Plaintiffs' public nuisance claims are not moot and do not fail because Weyerhaeuser was negligent....................................................... 21

        C.    Weyerhaeuser's Negligence in Failing to Act Created a Nuisance. ......... 25

        D.    Weyerhaeuser Had Knowledge of Its Interference with Elvira Kilty's Common Public Right. ................................................................. 27

1

V.      PLAINTIFFS' AMENDED COMPLAINT PROPERLY ALLEGES
        CLAIMS FOR WHICH PUNITIVE DAMAGES MAY BE GRANTED. .......... 28

VI.     PUBLIC POLICY DOES NOT FAVOR DISMISSAL OF PLAINTIFFS
        CLAIMS. ............................................................................................................ 29

CONCLUSION ................................................................................................................. 32

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Public Service Corp.*,
  279 Wis. 2d 488, 694 N.W.2d 420, (Wis. Ct. App. 2006)......................................... 17, 18

*Alvarado v. Sersch*,
  262 Wis. 2d 74 (2003) ................................................................................................ 28

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986)...................................................................................................... 2

*Boyer v. Weyerhaeuser Company, et al.*,
  39 F. Supp. 3d 1036 (W.D.Wis. 2014) ................................................................. 1, 6, 18

*Brynwood Land Co. B. Industrial Commission*,
  243 Wis. 380 (Wis.1943)............................................................................................... 6

*Butler v. Advanced Drainage Sys.*,
  294 Wis. 2d 397, 412 (2006) ...................................................................................... 27

*C.W. v. Textron, Inc.*,
  807 F.3d 827 (7th Cir. 2015) ........................................................................................ 4

*Calewarts v. CR Meyer & Sons Co.*,
  363 Wis. 2d 654, 862 N.W.2d 902 (2015)................................................................... 26

*Campbell v. Lockheed Shipbuilding Corp.*,
  115 Wash. App. 8, 61 P.3d 1160 (Wash. Ct. App. 2002)............................................. 12

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)....................................................................................................... 2

*Gumz v. Northern States Power Co.*,
  295 Wis. 2d 600, 721 N.W.2d 515 (Wis. Ct. App. 2006)............................................. 18

*Henning v. Gen. Motors Assembly Div.*,
  143 Wis. 2d 1 (1988) .................................................................................................. 15

*Krause v. Western Casualty & Surety Co.*,
  3 Wis. 2d 61 (Wis.1958)................................................................................................ 9

*Lange v. Labor and Indus. Rev. Comm'n*,
  215 Wis. 2d 561 (Wis. App. 1997) .............................................................................. 13

*Melendrez v. Ameron Int'l. Corp.*,
  240 Cal. App. 4th 632 (Cal. Ct. App. 2015) ....................................................... 10, 11, 12

*Mintz v. Mathers Fund, Inc.*,
    463 F.2d 495 (7th Cir. 1972) ...................................................................... 2

*Mulder v. Acme-Cleveland Corp.*,
    95 Wis. 2d 173 (1980) ............................................................................... 9

*Neubauer v. Owens-Corning Fiberglas Corp.*,
    686 F.2d 570 (7th Cir. 1982) .................................................................... 13

*Pecher v. Weyerhaeuser Company*,
    859 F.3d 396 (7th Cir. 2017) ........................................................... 1, 4, 18

*Peter v. Sprinkmann Sons Corp.*,
    360 Wis. 2d 411 (Wis. App. 2015) ........................................................... 13

*Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*,
    254 Wis. 2d 77 (2002) .............................................................................. 12

*Riese v. Bldg. Servs. Indus. Supply, Inc.*,
    2012 WI App 97, 344 Wis. 2d 124, 820 N.W.2d 156 (Wis. App. 2012) ........................... 1

*Rockweit v. Senecal*,
    197 Wis. 2d 409, 541 N.W.2d 742 (1995) ................................................. 23

*Schweiner v. Hartford Accident & Indem. Co.*,
    120 Wis. 2d 344 (Ct. App. 1984) ....................................................... 14, 15

*Shultz v. Manufacturers & Traders Trust Co.*,
    1 F.R.D. 451 (W.D.N.Y. 1940) ................................................................... 2

*Sopha v. Owens-Corning Fiberglas Corp.*,
    230 Wis. 2d 212 (Wis. 1999) .................................................................... 13

*State Y.M.C.A. v. Industrial Commission*,
    235 Wis. 161 (Wis.1940) ............................................................................ 6

*Susan Gumieny, Applicant*,
    Claim No. 2004-017501, 2006 WL 2330523
    (Wis. Lab. Rev. Com. July 11, 2006) ........................................................ 13

*Thomas ex rel. Gramling v. Mallett*,
    285 Wis. 2d 236 (2005) ............................................................................ 28

*United States v. Diebold, Inc.*,
    369 U.S. 654 (1962) ................................................................................... 2

*Vogel v. Grant-Lafayette Elec. Coop.*,
    201 Wis. 2d 416, 548 N.W.2d 829 (1996) ................................................. 25

*Weiss v. City of Milwaukee*,
    208 Wis. 2d 95 (1997) ................................................................................ 8, 9

**Statutes**

Wis. Stat. § 102.01(c) ................................................................................... 14

Wis. Stat. § 893.52 ................................................................................... 17, 18

Wis. Stat. § 895.043(3) ................................................................................. 26

Wis. Stat. §102.03 ........................................................................................ 14

Wis. Stat. 809.23(3) ..................................................................................... 26

**Other Authorities**

Fed. R. Civ. P. 56(a) ...................................................................................... 2

**Treatises**

Restatement (Second) of Torts § 821B(1) .................................................... 19

Restatement (Second) of Torts § 821B(2) .................................................... 19

Restatement (Second) of Torts § 821C ........................................................ 19

Restatement (Second) of Torts § 821C(1) .................................................... 19

Now Comes Plaintiffs, by and through their undersigned counsel of record, and hereby oppose Defendant Weyerhaeuser Company ("Weyerhaeuser" or "Defendant")'s Motion for Summary Judgment.   For the reasons stated herein, Plaintiffs respectfully request that Defendant's Motion be denied in its entirety.

## INTRODUCTION

The majority of Weyerhaeuser's arguments were briefed and ruled upon by this Court in a series of related actions (hereinafter referred to as "the earlier Marshfield cases"). *See. e.g.*, *Boyer v. Weyerhaeuser Company, et al.*, No. 14-cv-286-wmc (W.D. Wis.).   Six of the eight earlier Marshfield cases were appealed to the Seventh Circuit.   On appeal, the Seventh Circuit explicitly "affirm[ed] the multiple rulings of the district court dismissing the claims against both defendants on appeal and denying reconsideration."   *Pecher v. Weyerhaeuser Company*, 859 F.3d 396, 398 (7th Cir. 2017).   For this reason alone, all of Defendant's arguments that have previously been presented to this Court should be denied in their entirety.

The instant matter is one of two new actions arising from members of the Marshfield community becoming diagnosed with mesothelioma as a result of their exposure to asbestos within their community and home.   "Asbestos cases arising from exposures in the dim past of history are not easy to prove precisely because many of the victims are dead, and much of the documentation no longer exists. Yet, we have enough to let a jury—rather than judges—decide the contested disputes of fact."   *Riese v. Bldg. Servs. Indus. Supply, Inc.*, 2012 WI App 97, ¶ 34, 344 Wis. 2d 124, 820 N.W.2d 156 (Wis. App. 2012).

## LEGAL STANDARD

Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed.

1

R. Civ. P. 56(a).  "The movant must discharge the burden the Rules place upon him: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (White, J. concurring).  "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  Similarly, "[c]redibility determinations . . . are jury functions, not those of a judge." *Id*. at 255.

Summary judgment is "a drastic remedy."  *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972). The Seventh Circuit holds that summary judgment "is never warranted except on a clear showing that no genuine issue as to any material fact remains for trial."  *Id.* (citing *Shultz v. Manufacturers & Traders Trust Co.*, 1 F.R.D. 451 (W.D.N.Y. 1940)).   In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." *Id*.; *see United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").   The evidence presented herein more than meets this threshold.

## ARGUMENT

In this matter, Plaintiffs have asserted claims for common law negligence, negligent public nuisance and intentional public nuisance against Defendant Weyerhaeuser Company. Plaintiffs' Response to Weyerhaeuser's Statement of Proposed Findings of Fact (hereinafter "RFOF") ¶¶ 18-20.  Elvira Kilty (also referred to herein as "Decedent") developed mesothelioma

as a result of exposure to asbestos released into the community from the Weyerhaeuser plant in Marshfield, Wisconsin, as well as from the asbestos brought home on the clothing of her children who worked at the Weyerhaeuser plant.  The community emissions began in the 1950s due to inadequate dust collection systems and practices such as opening up plant windows with fans blowing the dusty air outside.  The emissions continued until an alleged "asbestos-free" substitute was implemented in about 1979.

## I.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE WISCONSIN WORKER'S COMPENSATION ACT.

Weyerhaeuser asserts that Plaintiffs should be barred from bringing claims against it based on Elvira Kilty's ("Ms. Kilty" or "Decedent") separate and distinct community exposures because Plaintiffs have alleged claims against other defendants based on Ms. Kilty's exposure to asbestos while employed by Weyerhaeuser.  As shown below, Plaintiffs' common law negligence, negligent nuisance, and intentional nuisance claims brought against Weyerhaeuser are not barred by the exclusivity provision of the Wisconsin WCA.

### A.    The Seventh Circuit Court of Appeals explicitly affirmed the decisions of this Court.

As an initial matter, this Court previously issued rulings on all arguments by Defendant that similarly situated plaintiffs' claims were barred by the Wisconsin Workers' Compensation Act ("WCA").  *See, e.g.*, *Boyer v. Weyerhaeuser Company*, No. 3:14-CV-286, dkt. #464 (W.D. Wis. 2016).  Furthermore, the Seventh Circuit explicitly affirmed this Court's rulings in the earlier Marshfield cases.  No new case law from Wisconsin is cited by Defendant that would change this Court's rulings.  Instead, Defendant only rehashes or repackages prior aguments.

The consolidated proceeding in the Seventh Circuit affirmed this Court's assessment of the difference between the three cases which survived summary judgment against Weyerhaeuser and the three which were dismissed for insufficient evidence.  The difference was found in the

case specific evidence gleaned from the family members' and coworkers' testimony about the environmental community and family member take home exposures and the records of Weyerhaeuser. The same case specific evidence will ultimately determine the outcome in the instant matter with regard to this Court's parameters of living within a 1.25 mile radius of the Marshfield plant for at least one year for community/environmental exposures and whether a household family member had sufficient occupational exposure to cause substantial nonoccupational exposures to the victim.

For its argument that Plaintiffs' claims are barred by the WCA, Weyerhaeuser points to language from the Seventh Circuit's opinion issued in *Pecher*. *See*, *e.g.*, Def. Br. 1, 6, 8, 13 (quoting *Pecher v. Weyerhaeuser Company*, 859 F.3d 396 (7th Cir. 2017) ("the claims at issue are covered by the exclusive remedy provisions of Wisconsin's Worker's Compensation Act, Wis. Stat. § 102.03(2). Plaintiffs attempt to get around this bar by recharacterizing their injuries occurring off the job. These arguments are unavailing.")). However, this quotation is not given the rightful context that it deserves as the Seventh Circuit in numerous other places in the same opinion affirmed all of this Court's evidentiary and legal rulings allowing the nonworkplace claims to go forward.

Defendant attempts to extend the WCA to cover situations in which the victim is not performing services for the employer. As this Court earlier recognized, no Wisconsin case holds that the long established requirement of performing services for the employer may be overlooked. In each of the three cases against Weyerhaeuser on appeal, this Court found no case specific evidence that the decedent lived within 1.25 miles of the Marshfield plant for at least one year or that a household family member had sufficient exposure to cause substantial exposures to the victim. Moreover, the Seventh Circuit recognized that this Court's admission of

4

expert testimony in the *Boyer*, *Pecher*, and *Sydow* cases under Rule 702 "could [not] be considered an abuse of discretion." *Pecher*, 859 F.3d at 400. (citing *C.W. v. Textron, Inc.*, 807 F.3d 827 (7th Cir. 2015)). Ultimately, the Seventh Circuit held that "the decisions of the district court below are AFFIRMED." *Id.* at 403 (emphasis in original). Thus, contrary to Weyerhaeuser's reading of the Seventh Circuit opinion, the Court of Appeals did not change the rulings of this Court allowing the community and household exposure claims to go forward if the evidence was sufficient to meet the parameters set by this Court to establish exposures outside the worker compensation remedy.

**B.      There is no remedy for Plaintiffs under the Wisconsin Workers' Compensation Act.**

Plaintiffs in this litigation have consistently made the argument that there is no remedy under the WCA particularly where the injured plaintiff is deceased and leaves behind no spouse, as is the case here. Wisconsin Statutes § 102.46 states: [w]here death proximately results from the injury and the deceased leaves a person <u>wholly dependent upon him or her for support</u>, the death benefit shall equal 4 times his or her average annual earnings . . ." Wisconsin Statutes § 102.51 defines dependents as one of the following categories:

1. A wife upon a husband with whom she is living at the time of his death.

2. A husband upon a wife with whom he is living at the time of her death.

2m. A domestic partner under ch. 770 upon his or her partner with whom he or she is living at the time of the partner's death.

3. A child under the age of 18 years upon the parent with whom he or she is living at the time of the death of the parent, there being no surviving dependent parent.

4. A child over the age of 18 years, but physically or mentally incapacitated from earning, upon the parent with whom he or she is living at the time of the death of the parent, there being no surviving dependent parent.

Here, Elvira Kilty passed away leaving no spouse or children under the age of 18.  While she does have adult children, none of them are physically or mentally incapacitated from earning. As such, there is no legal remedy for Ms. Kilty's children under the Wisconsin WCA.  Nor would Mrs. Kilty or her estate have any remedy under the WCA for a disability wages claim as she was retired at the time of her diagnosis.

### C.    Plaintiffs' claims against Weyerhaeuser are outside the parameters of the Wisconsin Workers' Compensation Act.

In denying summary judgment in three earlier Marshfield cases, this Court permitted the plaintiffs "to proceed on nuisance clams against Weyerhaeuser limited to the alleged community [and household] exposure to asbestos that is demonstrably separate and distinct from their exposures during the course of their employment."  *Boyer v. Weyerhaeuser Company, et al.*, 39 F. Supp. 3d 1036, 1047 (W.D. Wis. 2014).  The community and household exposures alleged in the prior Marshfield cases were based on the same allegations as those alleged here and are separate and distinct from any exposure due to employment.  The precedent in Wisconsin case law, which guided this Court in earlier rulings, is unchanged.

Wisconsin courts hold the WCA remedy does not apply if the injury occurs when the employee is not acting as an employee.  *See State Y.M.C.A. v. Industrial Commission*, 235 Wis. 161, 161 (Wis. 1940); *see also Brynwood Land Co. B. Industrial Commission*, 243 Wis. 380 (Wis.1943).   For the WCA exclusivity to bar a claim:  "Not only is it necessary that the employee at the time of the accident be performing services growing out of and incidental to his employment but the accident causing the injury must arise out of the employment."  *Cutler-Hammer, Inc v. Industrial Commission*, 5 Wis. 2d 247, 250 (Wis.1958).  "Where there is no evidence that at the time the injury was received the claimant was engaged in any work for his

employer, a finding is not warranted that the injury arose out of and in the course of his employment." *State Y.M.C.A.*, 235 Wis. 161 at 165-166.

For example, assume a Marshfield resident is operating a saw which cuts into the asbestos core and releases fibers.    In scenario A, the resident inhales the fibers inside the plant, and the WCA applies.    In scenario B, the fibers are absorbed into the dust collection system and a malfunction of the baghouse system causes the fibers to be emitted into the community air.    If the fibers are blown into the resident's house and inhaled by the resident while watching television, the WCA does not provide a remedy.   In scenario C, the fibers contaminate the resident's clothing in his work station at the Marshfield plant.  The resident then wears his work clothes home, and the fibers are rubbed off on his car seat.  The resident then goes on a vacation to Florida and reentrains the fibers into the air of the car and he and his family inhale the fibers in Florida.    The WCA does not extend to provide a remedy for the Florida vacation.  The point of these scenarios is the single fact of the fibers being released in the workplace does not determine whether the WCA remedy is available.

The complaint alleges three separate causes of Ms. Kilty's mesothelioma – workplace exposure, community exposure, and household exposure from family members.  Evidence of the existence of the three causes of Ms. Kilty's mesothelioma pled in the Complaint must be viewed in the light most favorable to Plaintiffs.  In many situations, remedies are available both under the WCA and in tort for the same medical condition with multiple contributing causes.  To accept the position of Weyerhaeuser at this stage disregards the traditional method of allocating the fault in asbestos cases through the jury verdict form.  For example, if the entities listed on the verdict form fault apportionment include employers of the victim, product sellers, contractors, and property owners.  Fault is apportioned to all four.  The presence of the employer on the

verdict form does not, as Weyerhaeuser contends, bar findings of fault against civil tortfeasors. *See Connar v. West Shore Equipment of Milwaukee*, 68 Wis. 2d 42 (1975) (often cited by other defendants in asbestos cases to show the employer must be on the verdict form in negligence cases with the tortfeasors).

Put another way, imagine that a heavy piece of equipment is accidentally dropped on the head of an employee by the employee's manager while working in an assembly line, and assume that the employee's manager is also the employer.  Later the same day, the manager/employer follow's the employee to their home and assaults the employee by punching them in the head, and the employee suffers a brain hemorrhage.  The doctors at the hospital are unable to determine which act is the cause of the brain hemorrhage, the accident occurring on the assembly line (accidentally dropping the piece of heavy equipment) or the assault occurring at home (punching the employee in the head).  Just because there are multiple actions which lead to the brain hemorrhage, and one of those actions arose out of the employment, does not mean that the employee does not have a separate tort action against the employer for the assault.

As pled, Plaintiffs' claims against Weyerhaeuser for community and family member household exposures are based on conduct or activities that do not fall under the WCA.  The exposures alleged as the basis for causation include those "transported and emitted to areas outside the plant by:  a.  worker clothing, personal effects, hair, and skin which had become contaminated by asbestos fibers at the plant; and b.  collecting, removing, hauling, and dumping asbestos dust and waste materials."  Am. Compl. at ¶ 27.  The complaint also alleges the "plant emissions and transport of asbestos fibers as described above caused contamination of housing, vehicles, community businesses, and other places *outside the plant* frequented by decedent."  *Id.* at ¶ 28 (emphasis added).  Furthermore, the complaint specifically alleges that the inhalation of

8

asbestos fibers by Decedent occurred "when activities were being performed by decedent or other persons, including without limitation other household members or guests, that were not part of 'performing service growing out of and incidental to decedent's employment' for Roddis or Weyerhaeuser within the meaning of Wis Stat. §102.03(c)."  *Id.* at ¶ 30.  The statutory requirement that Ms. Kilty's injury did not "grow out of" or was not "incidental to" her employment is a question of fact for the jury.  The controlling statutory language – "performing service growing out of and incidental to his or her employment" – is interchangeable with the phrase "course of employment."  *Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 104 (1997).   An injury occurs in the course of employment when "it takes place within the period of the employment, at a place where the employee reasonably may be, and while he [or she] is fulfilling his [or her] duties or engaged in doing something incidental thereto."  *Id.* at 104.

Construing the evidence in the light most favorable to Plaintiffs, community and household exposures (including vehicle and other non-workplace settings) cannot be determined as a matter of law to arise from the "course of employment."  The inhalation of the fibers occurred during conduct or activities that take place in community or household settings outside the workplace, which do not involve performance of employment duties.  Moreover, the complaint specifically alleges that the inhalation of asbestos fibers by Decedent occurred "when activities were being performed by decedent or other persons, including without limitation other household members or guests, that were not part of 'performing service growing out of and incidental to decedent's employment' for Roddis or Weyerhaeuser within the meaning of Wis Stat. §102.03(c)."  Am. Compl. at ¶ 30.

Extending WCA liability to non-employment related activities performed in the home and in the community is inconsistent with existing Wisconsin case law that activities much closer in

time and space to the employer's premises and working hours are not barred. *See, e.g., Krause v. Western Casualty & Surety Co.*, 3 Wis. 2d 61, 68 (Wis.1958) ("The general rule, therefore, is that an employee going to or from work is not in the course of his employment while off the premises of the employer."). Upon leaving the employer's premises and during non-working hours, the WCA remedy has never been recognized as applicable in the Wisconsin courts. Creating piecemeal exceptions to established law does far more to upset the "balance [of competing social interests] achieved by the worker's compensation law" than permitting this suit to continue. *Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 180 (1980).

> ### D. The California and Washington case law set forth by Weyerhaeuser is distinguishable from the facts of this matter.

In past rulings, this Court allowed claims for fibers transported home on the clothes of other family members or through community exposures to go forward. *Boyer*, 2016 WL 705233, at *20-21, 25. Weyerhaeuser now makes the argument that such claims are barred because the disease mesothelioma is a "WCA-covered injury" that is subsumed by the workplace exposures. Def. Br. 5-13. The medical evidence is an issue of fact that must be developed before a ruling may be issued on this topic.

In the original motion to dismiss filed in September 2016, Weyerhaeuser referred to mesothelioma as a "single, indivisible injury." The 2016 motion was not ruled on. Weyerhaeuser, in the newly filed 2017 motions, uses the terminology of a "WCA-covered" injury in place of the "single, indivisible injury" terminology. The apparent purpose of the new terminology is to obscure disputed factual issues that must first be resolved about the science and medicine of how asbestos related disease is caused. Regardless of the terminology, these fact issues require expert testimony before Weyerhaeuser can contend that the presence of workplace

exposures makes the community and family member take home exposures insignificant in the causation assessment.

Weyerhaeuser cites to two cases on this theory based on the state laws of California and Washington in an attempt to rewrite Wisconsin law and establish disputed scientific claims as a matter of law.  Arguments concerning *Melendrez v. Ameron Int'l. Corp.*, 240 Cal. App. 4th 632 (Cal. Ct. App. 2015), were already made to this Court in Weyerhaeuser's reply briefing in support of its motions for summary judgment in the earlier Marshfield cases.[1]  Weyerhaeuser also argued the same foreign authority in the appeal to the Seventh Circuit.  The citation to these cases did not change the ruling of either this Court or the Seventh Circuit that the Wisconsin WCA was not a bar to community and family member take home exposures.

Moreover, California and Washington case law is not controlling authority as to medical science or Wisconsin case law.  These cases can each be distinguished because the various non-Wisconsin workers compensation statutes do not require, as does Wisconsin's WCA 102.03(c)(1), that the employee must be performing service growing out of and incidental to employment at the time of injury.

Weyerhaeuser cites *Melendrez*, 240 Cal. App. 4th 632, for the proposition that this Court should determine that Plaintiffs' claims are within the parameters of the WCA Exclusivity Provision.  Def. Br. 10-12.  The facts in *Melendrez* are distinguishable, and California law differs from Wisconsin.  First, *Melendrez* only finds the worker compensation remedy bars claims for household exposures for fibers transported outside the workplace by the victim, the same finding made by this Court.  *Melendrez* provides no additional authority to change this Court's prior rulings that other non-workplace exposure claims can proceed.

---

[1] *See Boyer v. Weyerhaeuser, et al.*, No. 3:14-cv-00286-wmc (Doc. #385), at 4 (W.D. Wis. 2014).

Second, in *Melendrez*, the non-occupational exposures for which the decedent's survivors brought claims against his employer, Ameron International Corp. ("Ameron"), chiefly alleged that Lario Melendrex was "*permitted* to take [asbestos-containing] waste or scrap pipe home" for home projects.  *Melendrez*, 240 Cal. App. 4th at 636 (emphasis added).  "The plant where Melendrez worked allowed employees to take home reject Bondstrand pipe *if they received a permission slip signed by a supervisor*."  *Id.* (emphasis added).  Thus, in addition to the differences in statutory language, *Melandrez* involved employer practices that affected the exposures outside the workplace, specifically the requirement to get approval from a supervisor before taking the asbestos-containing product from the plant.  Here, the evidence establishes Weyerhaeuer had no policies for laundering of work clothing at home.  The same factual investigation about the employer rules and procedures must be conducted in the instant matter and cannot be resolved on the pleadings.

Finally, *Melendrez* relies on a series of California decisions interpreting California's WCA.  The past decisions establish concepts such as: "the exclusivity provisions encompass all injuries collateral to and derivative of an injury compensable"; "the work connected injury engenders a single injury"; "not divisible into separate elements of damages available from separate tribunals."  *See* 240 Cal. App. 4th 642-43.  Without citing any authority or building a trial court record, Weyerhaeuser asks this Court to speculate Wisconsin courts follow *Melendrez*.  Likewise this Court is asked to presume without a medical record mesothelioma is a "single injury."

Weyerhaeuser next points to a Washington appellate court case in which the plaintiff was alleging claims against Lockheed Shipbuilding Corp. for his asbestos exposure while working as a sub-contractor, where the plaintiff also worked directly for Lockheed and previously agreed to

12

a settlement under the Longshore and Harbor Workers' Compensation Act for the same injury. *Campbell v. Lockheed Shipbuilding Corp.*, 115 Wash. App. 8, 9, 61 P.3d 1160, 1161 (Wash. Ct. App. 2002). *Campbell* is distinguishable from the facts of the matter at issue here because all of the exposures (fiber inhalation) from which the plaintiff claimed his injury arose occurred on the employer's premises. *Id.* at 9. Here, Plaintiffs' claims against Weyerhaeuser arise from exposures that did not occur on Weyerhaeuser's premises. Moreover, nuisance allegations, specifically, involve interference with the right to enjoy "the use of land or of a public place." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 254 Wis. 2d 77, 102 (2002). Thus, Plaintiffs should not be penalized from bringing claims against Weyerhaeuser for fibers inhaled outside the workplace that other Marshfield residents would be permitted to allege but for the Decedent's employment with Weyerhaeuser.

### E. Plaintiffs' allegations against other defendants regarding Ms. Kilty's occupational exposures do not bring Plaintiffs' allegations against Weyerhaeuser based on non-occupational exposures within the WCA.

Weyerhaeuser incorrectly contends that Plaintiffs' claims are barred by the WCA because "Plaintiffs' Complaint expressly alleges that Decedent's occupational exposures were a contributing cause of the injury—mesothelioma." Def. Br. 6. In support of this contention, Weyerhaeuser relies on several opinions from Wisconsin courts that entirely conflict with the facts of the instant action. For example, two cases cited by Weyerhaeuser involve physical injuries that were subsequently re-aggravated at work and whether those injuries are barred from recovery under the WCA. *See Lange v. Labor and Indus. Rev. Comm'n*, 215 Wis. 2d 561 (Wis. App. 1997) (claimant was barred from recovering additional workers' compensation benefits after a subsequent slip and fall accident aggravated a prior work-related back injury for which benefits were previously received); *see also Susan Gumieny, Applicant*, Claim No. 2004-017501, 2006 WL 2330523 (Wis. Lab. Rev. Com. July 11, 2006) (employer appealed the decision of the

administrative law judge finding that the applicant's injury was originally sustained while working with the employer's samples in the employer's showroom rather than prior because the employer asserted that the injury was caused by a pre-existing condition).

In the rest of the cases cited by Weyerhaeuser in Section I.C of its argument, the term "injury" is being defined in relation to the statute of limitations period.  Def. Br. 5-9; s*ee also Neubauer v. Owens-Corning Fiberglas Corp.*, 686 F.2d 570 (7th Cir. 1982); *Sopha v. Owens-Corning Fiberglas Corp.*, 230 Wis. 2d 212 (Wis. 1999); *Peter v. Sprinkmann Sons Corp.*, 360 Wis. 2d 411 (Wis. App. 2015).  Many courts across the country, including in Wisconsin, define the date of injury for the purposes of the statute of limitations as the date of the diagnosis of an asbestos-related disease, rather than the date or dates upon which the victim was allegedly exposed to asbestos.  *Id.*  However, this definition of injury is not meaningful within the WCA context because the WCA explicitly defines injury as "mental or physical harm to an employee caused by accident or disease . . ."  Wis. Stat. § 102.01(c).  Moreover, the definition of injury, as it relates to the statute of limitations, does not bring Plaintiffs' claims against Weyerhaeuser based on non-occupational injury within the WCA exclusivity provision.

**F.    The dual persona exception is inapplicable to the facts of this case.**

Weyerhaeuser argues Plaintiffs must plead a "dual persona" theory to avoid the WCA exclusivity bar.  Dual Persona only applies after the Court finds that a plaintiff's injury is alleged to arise from services which fall within the scope of the exclusive remedy provision of Wis. Stat. §102.03(2).  As discussed above, the exclusivity provision is only triggered when "the employee is performing service growing out of and incidental to his or her employment" at the time of injury, and "[w]here the accident or disease causing injury arises out of the employee's employment."  Wis. Stat. §102.03(1).  Plaintiffs do not concede the statutory requirement is met and have no reason to plead "dual persona."

14

The case law cited by Weyerhaeuser concerning the dual persona doctrine has no application to injuries which arise from conduct or activities outside the course of one's employment.  The claims for community and household exposures here are based on conduct outside the employment relationship, and therefore, dual persona need not be alleged.  Only after finding the conduct or activities involving the employment relationship fall within the scope of the WCA does the dual persona doctrine come into play as an issue which the court needs to consider.

The cases Weyerhaeuser cites in support of the dual persona argument can be distinguished from the evidence in the present case.  Defendant's cases all involve claims arising from conduct occurring while the plaintiffs were acting in the course of their employment.  In *Schweiner v. Hartford Accident & Indem. Co.*, 120 Wis. 2d 344 (Ct. App. 1984), the plaintiff "during the course of his employment, . . . sustained injuries when a molding machine malfunctioned."  *Id.* at 346. The cause of the *Schweiner* plaintiff's injuries was an allegedly faulty electrical switch installed on the molding machine that the plaintiff used in the course of his employment.  The company that installed the switch eventually merged with the plaintiff's employer.  The dual persona issue came into play with regard to the question of whether the obligations and liabilities of the company that installed the switch survived the merger.  *See id.* at 352-54.  Because the injury in *Schweiner* occurred in the defendant's plant while the plaintiff was providing services incidental to his employment, the case does not support Weyerhaeuser's argument that plaintiffs must prove a dual persona when the claim is not based on the employment relationship.

Similarly, *Henning v. Gen. Motors Assembly Div.*, 143 Wis. 2d 1 (1988) is not relevant to determining whether an employee is able to sue an employer for injuries sustained outside of the

employment arrangement.  There, the plaintiff was injured during the course of his employment as a sanitation worker.  The fact that the injury occurred while the plaintiff was performing employment related services for his employer means that the court did not reach the issue of whether the employer could be liable for injuries sustained outside of that relationship.

Moreover, even if this Court determines that the dual persona exception is at play in this matter based on the facts, Plaintiffs have sufficiently plead such exception.  The difference between dual persona and dual capacity is a fine line.  Defendant correctly points out that Plaintiffs alleged facts against Weyerhaeuser as the owner/operator of the Weyerhaeuser plant. Def. Br. at p. 18.  However, any claim by Decedent against Weyerhaeuser for her occupational injury under the WCA would involve Weyerhaeuser as an employer.  Weyerhaeuser as an owner/operator owed a separate duty to the general public of Marshfield, Wisconsin than it did to Decedent in its employer/employee relationship.  The line should not be blurred only based on the fact that Decedent was also a member of the general public of Marshfield.

## II.   WHETHER WEYERHAEUSER WAS AWARE OF THE RISKS OF ENVIRONMENTAL EXPOSURE PRIOR TO 1965 IS INSIGNIFICANT.

Defendant next contends that the risks of non-occupational exposure were not known from 1955 to 1962, and therefore, Weyerhaeuser cannot be held liable.  Defendant concedes that Plaintiffs have put forth sufficient evidence to establish that there is a genuine issue of fact as to whether Weyerhaeuser had knowledge of the risk of asbestos exposure at least as early as 1965. Yet, Defendant claims that even if there was sufficient information for Weyerhaeuser to have knowledge of the risk of <u>occupational</u> exposure prior to 1962, it was not foreseeable for Weyerhaeuser to be aware of the risk of <u>environmental</u> exposure to asbestos.  However, asbestos has been recognized as a human health hazard for nearly a century.  PAFF ¶ 165.

Beginning in 1913, there were discussions in the industrial hygiene literature regarding the hazards associated with bringing home toxic dusts on worker clothes and how, for that reason, employers should provide changing rooms in their factories, facilities, etc. Clark Aff., Exhibit 15 (Tolman 1913) ("The ordinary or street-clothes should be taken off and replaced by special suits to be worn during working hours. . . . By removing the working-clothes before meals and before leaving the factory the poison is not carried into lunchrooms or into the homes of the workers."). By 1943, the risks of household exposures to toxins brought home on the clothing of marine electricians was reported in the *Archives of Dermatology and Syphilology*. Clark Aff., Exhibit 16 (Good 1943).

The Restatement (First) of Torts that was current at the time of Defendant's actions stated:

> The fact that the actor, at the time of his negligent conduct, neither realized nor should have realized that it might cause harm to another in the manner in which it occurred, is not of itself sufficient to prevent him from being liable for the other's harm if his conduct was negligent towards the other and was in all other particulars a substantial factor in bringing about the harm.

Restatement (First) of Torts § 435 (1934), cmt a. In Florida, a court reasoned that "[a] duty to warn attaches, not when scientific certainty is established, but whenever a reasonable man would want to be informed of the risk in order to decide whether to expose himself to it." *Johns-Manville Sales Corp. v. Janssens*, 463 So.2d 242, 251 (Fl. 1st DCA 1984). Similarly, Maryland courts have explained foreseeability as follows: "the pertinent inquiry is not whether the actual harm was of a particular kind which was expectable. Rather, *the question is whether the actual harm fell within a general field of danger which should have been anticipated*." *Moran v. Faberge,* 273 Md. 538, 551 (1975). *Moran* also pointed out that

> "*foreseeability*" *refers to the general type of harm sustained*. It is literally true that there is no liability for damage that falls entirely outside the *general threat of*

17

> *harm* which made the conduct of the actor negligent.... [I]f the harm suffered falls
> within the general danger area, there may be liability, provided other requisites of
> legal causation are present.

*Id.* at 551-52, (emphasis added in *Moran* opinion) (quoting Harper, *A Treatise on the Law of Torts* § 7 (1933)).

Thus, it is the <u>harm</u> that need be forseeable, not the <u>type of harm</u>.  In this case, the fact that Weyerhaeuser had knowledge that exposure to asbestos may cause mesothelioma is enough to bring Elvira Kilty's claims within the "danger zone" of liability.  As an asbestos-containing door manufacturer and plant facility owner in Marshfield, Weyerhaeuser owed a duty to the members of the community surrounding it to refrain from causing them harm.

## III.   ELVIRA   KILTY'S   NON-OCCUPATIONAL   EXPOSURES   WERE   A SUBSTANTIAL CONTRIBUTING FACTOR

It is enough that Elvira Kilty's non-occupational exposures are <u>a</u> substantial contributing factor.  It is not required that they be <u>the</u> substantial contributing factor.  Epidemiological studies and the relevant medical literature clearly establish the fact that "cumulative exposure" to asbestos causes mesothelioma *See, e.g.,* Exhibit 39, Dail & Hammar's Pulmonary Pathology, at 587 ("One factor that emerges from the Peto model and its modifications is that when there are multiple asbestos exposures, each contributes to cumulative exposure and hence to the risk and causation of MM, within an appropriate latency interval.").  As such, each Plaintiff's environmental and/or household asbestos exposure, regardless of any occupational exposure, increased the risk and was a substantial factor in causing that Plaintiff's asbestos-related disease.

Plaintiffs' experts do not have to "rule out" the fact that occupational exposures may have contributed to each Plaintiff's asbestos-related disease in order for their opinions to be reliable and relevant. *Cf. Valentine v. CSX Transportation, Inc.,* 2011 U.S. Dist. LEXIS 58813, at *26 (S.D. Ind. May 10, 2011) ("The fact that other potential causes are not completely ruled out can

be explored by cross-examination."). Thus, while Plaintiffs' experts state that the Plaintiffs' occupational exposures were sufficient alone to have caused Plaintiffs' injuries, Plaintiffs' experts similarly opine that "emissions into the community air from use of [asbestos containing core materials at Roddis/Weyerhaeuser] as a result of plant operations, and transport of fibers from the plant which caused household exposures, **each substantially contributed to [their] cumulative lifetime asbestos exposure which caused [their asbestos-related diseases].**" Report of Henry Anderson 2017, at 4.

A specific quantification of non-occupational exposure is not necessary for attribution of risk or causation opinions. Instead, Plaintiffs merely need to establish that Decedent's environmental and/or household exposure to asbestos-containing mineral core dust was a substantial factor in causing that individual's asbestos-related disease (i.e. that Decedent's community and/or household exposure to asbestos from Weyerhaeuser's operations was greater than the amount of asbestos fibers in the uncontaminated ambient [background] air). Applying a reliable methodology and relying on testimony of visible mineral core dust, epidemiological studies, scientific literature and studies on fiber release, and the medical literature relating to causation, Plaintiffs' experts have reached such a conclusion in each of these cases. These conclusions are both reliable and relevant.

## IV.    PLAINTIFFS' PUBLIC NUISANCE CLAIMS

### A.    Plaintiffs' public nuisance claims are not barred by the statute of limitations.

Defendant's assertion that Plaintiffs' "claim for intentional or negligent nuisance must be brought within three years" again takes this Court's analysis out of context. The Wisconsin Court of Appeals previously summarized the applicable law regarding the statute of limitations for negligence and nuisance claims in a case where a dairy farmer sued an electric utility

company, claiming stray voltage injured his cattle.  *Allen v. Public Service Corp.*, 279 Wis. 2d 488, 495, 694 N.W.2d 420, 424 (Wis. Ct. App. 2006).  The court stated:

> WISCONSIN STAT. § 893.52 provides a six-year limitations period for negligence and nuisance claims.  The accrual of a stray voltage claim is governed by the discovery rule.  Under that rule, a plaintiff's claim accrues when the plaintiff objectively knows, or with reasonable exercise of care should have known, the cause of the injury and the defendant's part in that cause. Furthermore, "[a] plaintiff can rely on the discovery rule only if he or she has exercised reasonable diligence."  Reasonable diligence means "such diligence as the great majority of persons would use in the same or similar circumstances" to discover the cause of the injury.

*Id.* (citations and footnote omitted).   In *Allen*, the trial court found that the distribution of electricity by the power company was a nuisance.  *Id.* at 497, 694 N.W.2d at 425.   The Court of Appeals affirmed the trial court's conclusion that the dairy farmer took reasonable steps to determine the cause of the damages and that the farmer could not have objectively known the cause of the damage until after an isolator was installed and the cows' health improved.  *Id.* Moreover, the defendant in *Allen* "went to the farm three times and told Allen there was no problem."  *Id.*  The court stated that "Allen cannot be faulted for accepting the results of [the defendant's] testing . . ."  *Id.*

Similarly, in *Gumz v. Northern States Power Co.*, 295 Wis. 2d 600, 721 N.W.2d 515 (Wis. Ct. App. 2006), the plaintiffs commenced an action against the power company for electric current, which caused their herd of cows to suffer from various "health issues, poor production, and deaths."  295 Wis. 2d at 605, 721 N.W.2d at 517.   The trial court in *Gumz* denied the defendant's motion for summary judgment based upon the six-year statute of limitations under Wis. Stat. § 893.52, and the jury found the defendant causally negligent for maintaining a nuisance.  *Id.*at 606, 721 N.W.2d at 518.

Here, Weyerhaeuser argues that the statute of limitations is tolled on Plaintiffs' public nuisance claims because Plaintiffs limited the years in which they alleged that Weyerhaeuser

20

created a public nuisance to between 1955 and 1979. However, in *Boyer v. Weyerhaeuser Co.*, 2016 WL 705233, at *25 (W.D. Wis. Feb. 19, 2016), *reconsideration denied*, 2016 WL 2619439 (W.D. WIs. May 5, 2016), *aff'd sub nom. Pecher*, 859 F.3d 396, this Court acknowledged that "the discovery rule is available [] nuisance claims . . ." Similar to the facts in *Allen* and *Gumz*, Plaintiffs did not have knowledge of Ms. Kilty's asbestos-related injury until she was diagnosed with mesothelioma on July 16, 2015. This action was filed on July 20, 2016, within three years of Ms. Kilty's diagnosis. Subsequently, Plaintiffs took reasonable steps to determine the exposure to asbestos was the cause of Ms. Kilty's injury. Further, the public nuisance would not have been discovered by the exercise of ordinary care. Thus, Plaintiffs' public nuisance claim is not barred by the statute of limitations, regardless of whether the public nuisance is continuing or permanent and regardless of whether the statute of limitations is three or six years.

**B.      Plaintiffs' public nuisance claims are not moot and do not fail because Weyerhaeuser was negligent.**

The Restatement (Second) of Torts defines a public nuisance as "an unreasonable interference with a right common to the general public." § 821B(1). "Circumstances that may sustain a holding that an interference with a public right is unreasonable include . . . [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort, or the public convenience . . ." *Id.* at § 821B(2). In order for an individual to maintain a public nuisance action, "one must have suffered harm of a kind different from that suffered by other members of the public . . ." *Id.* at § 821C(1). For example, "[w]hen the public nuisance causes personal injury to the plaintiff . . . the harm is normally different in kind from that suffered by other members of the public and the tort action may be maintained." *Id.* at § 821C cmt. d.

In 1960, when Weyerhaeuser purchased the Roddis Plywood Company ("Roddis"), Weyerhaeuser continued to manufacture the same asbestos-containing fire doors previously made by Roddis at the Marshfield plant.  PAFF ¶8.  The Weyerhaeuser plant did not discontinue the use of asbestos until eighteen years later in 1978.  RCSPFF ¶10.  Before discontinuing its use, Mr. D.B. Allen ("Allen") chronicled the history of emission problems at the Marshfield plant beginning in 1959.  PAFF ¶10.  At least one management employee, Ronald Koepke, admitted that mineral core dust or the Kaylo dust from the baghouses was one source of the dust emitted from the plant.  PAFF ¶49.  The Environmental Resources Manager for Weyerhaeuser in the Midwest visited the Marshfield plant on June 5, 1974 and identified two hazard areas:  "**(1) the occasional clogging of cyclones at the mineral core manufacturing plant and (2) wind blow of mineral core wastes during waste transfer at the plant, during the transportation to the landfill, and at the landfill transfer site itself.**"  PAFF ¶58 (emphasis added).  Another Weyerhauser manager intimately involved with the knowledge of community complaints was the maintenance supervisor Adolph Posch.  PAFF ¶15.  Posch directed discharge into the community at nighttime of the plugged up dust collection systems and was aware of the community resident complaints.  *Id.*

There is also ample testimony from Weyerhaeuser employees about the Weyerhaeuser plant's release of asbestos-containing mineral core dust into their community.  PAFF ¶¶11-22. For example, Charles Reno testified that when the mineral core baghouse would malfunction or plug up, dust would shoot up into the air like a geyser.  PAFF ¶12.  Weyerhaeuser management encouraged the "blowing out" of baghouses at night in order to keep the plant up and running. PAFF ¶15, 18 ("And sometimes it was – snowed pretty good at night.  We'd open up the top off of a Sly [baghouse] and let it blow out so that it would clean it out.").  In addition to "blowing

out" the baghouses, the maintenance department was required to "let the dust run out" of the baghouses, augers, and silos in order to get inside and work on the problem. PAFF ¶17. Reno testified that the Weyerhaeuser employees "("[d]umped [the dust] on the ground. And when [they] got done fixing it, then [they] got the end loader over there and scooped it up and shoveled it up and dumped it in the truck," creating a "visible dust." *Id.* Other testimony included that from Elwood Shiller and Jerry Saindon. PAFF ¶18, Elwood Schiller Dep. 7/9/1997, at 60:24-61:5 ("opened the big door up on top [of the baghouse unit] if the wind was in the right direction it used to look like it snowed on the neighbors . . . it used to look like it snowed over there on the north side of town."); Jerry Saindon Dep. 4/3/2003, at 40:7-11 ("The bag houses they were, they were constantly plugging up and when they would do that, the dust would spew out of the top or the sides or whatever, and it was dispersed into the atmosphere."); *Id.* at 143:23-24 (observed emissions from the baghouses once or twice per week).

Many Marshfield community members also testified regarding their observance of mineral core dust from the plant in and around Marshfield interfering with the public's right to healthy, safety, and comfort. PAFF ¶¶36-46. For example, Larry Rogers testified that when he walked to the high school near the Marshfield plant from 1960 until 1963, he specifically recalled how dusty it would be "[e]ven with a few blocks away." PAFF ¶43. Additionally, he testified that "in the wintertime, you could see [the dust] on the snow." *Id.* Cheryl Vick testified that she could see the plant "spewing clouds" from her home on East Blodgett Street where she lived from 1961 until 1975. PAFF ¶44. Vick also worked inside the plant in the mineral core mill and recognized the dust appearing daily on the laundry outside of her home and on the dressers inside the home at her residence a few blocks from the plant was the "same" as the dust she saw inside mineral core mill. *Id.* Other community members testified about the "off-white"

or "gray-ish"[2] dust that would contaminate their laundry if they hung it outdoors to dry.  PAFF ¶40.  Janet Pecher, who lived a few blocks from the plant, testified that the dust she observed on her laundry when hung outdoors and on her window sills was the same as the dust she observed on her husband's clothing when he came home from working at the Marshfield plant.  PAFF ¶42.  The mineral core dust would also settle on the windows and window sills of the homes near the plant.  PAFF ¶41.

Additionally, Weyerhaeuser employees testified about their observation of the mineral core dust blowing onto the adjacent property near the plant.  PAFF ¶18 ("[o]n a real windy day, you could see [the dust from the baghouses] go that way [crossing the fence].  How far it went, I can't truthfully tell you."); Elwood Schiller Dep. 7/9/1997, at 60:24-61:5 ("opened the big door up on top [of the baghouse unit] if the wind was in the right direction it used to look like it snowed on the neighbors . . . it used to look like it snowed over there on the north side of town.").

Marshfield community members filed complaints with Weyerhaeuser regarding the nuisance the dust emissions were causing in the town.  PAFF ¶¶47-61.  These complaints included air pollution problems, including the blowing of fine materials across to a nearby creamery.  PAFF ¶53.  This pollution significantly interfered with the public health and public comfort.  For example, Mrs. Arnold Krostag wrote a letter to Weyerhaeuser on August 4, 1969, complaining that she lived two blocks away from the plant, and it was impossible for her to even enjoy her patio and lawn "due to the smoke, dirt and dust."  PAFF ¶55.  Thus, Weyerhaeuser created a public nuisance by emitting mineral core dust from the Marshfield plant, contaminating

---

[2] PAFF ¶37, Ronald Koepke Dep. 7/13/2015, at 54-55 (Koepke testified that mineral core dust was "off-white" and "has a distinctive appearance," and he further testified that he never saw any other dust from any other source in Marshfield that looked similar to mineral core dust.)

the community with mineral core dust, and interfering with the community members' public right to health, safety, and comfort.

Specifically to Elvira Kilty, Weyerhaeuser created a public nuisance by interfering with her public right to clean air while living in the Marshfield community from 1955-1962. Ms. Kilty's home was within the 1.25 mile radius required by this Court in prior rulings. Additionally, Elvira Kilty suffered a harm different from that of other members of the public because he developed mesothelioma as a result of Weyerhaeuser's public nuisance. Thus, Weyerhaeuser created a public nuisance by interfering with Elvira Kilty's public right to clean air, public health, public comfort, and public safety.

### C.    Weyerhaeuser's Negligence in Failing to Act Created a Nuisance.

In order to maintain an action for nuisance based on negligence, the following elements must be met: (1) an unreasonable interference with a right common to the general public must exist; (2) the defendant's conduct must the "legal cause" of the public interference; and (3) "[t]he defendant's conduct is otherwise actionable under the rules governing liability for negligent conduct, including notice." *See Milwaukee*, 277 Wis. 2d at 679-80, 691 N.W.2d at 680. A negligence-based nuisance action requires proof of causation. The elements necessary to state a claim for actionable negligence include: "(1) [a] duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Rockweit v. Senecal*, 197 Wis. 2d 409, 418, 541 N.W.2d 742, 747 (1995).

In addition to proving the elements of negligence, Plaintiffs must also demonstrate that Defendant was aware of the pollution of the community's atmosphere and the plaintiffs' property and was therefore negligent in failing to prevent the contamination. *See Milwaukee Metropolitan Sewerage Dist.*, 277 Wis. 2d 635, 684, 691 N.W.2d 658, 683. "Notice of the nuisance condition

may be either actual or constructive." *Id.* (citing *Physicians Plus*, 254 Wis. 2d 77, ¶ 29, 646 N.W.2d 777).

Here, Weyerhaeuser's corporate headquarters in Washington was made aware of the complaints made by community members. PAFF ¶48. As of August 1967, Weyerhaeuser continues to receive citizen complaints over particulate emissions from the Marshfield plant. PAFF ¶52. Specifically, Weyerhaeuser was made aware of the "heavy accumulation in the yards and the parking lot," dusty conditions compared to "falling snow," and the "powder is beyond the range of a cyclone's efficiency." *Id.* Again on December 27, 1967, Gordon DeBruine wrote to William H. Cooke of Weyerhaeuser detailing Marshfield's air pollution problems, specifically noting that sander dust and dryer exhaust of fine material is blowing across to a nearby creamery. PAFF ¶53. As of 1967, Weyerhaeuser was continuing to receive citizen complaints regarding the mineral core dust emissions from the Marshfield plant. *Id.* Weyerhaeuser had or should have had knowledge of the dangers of asbestos fibers to cause serious disease and death. Additionally, Weyerhaeuser had notice that its employees worked with and around asbestos-containing products while wearing devices designed to protect its employees from the risks associated with inhaling asbestos. Therefore, it was foreseeable that Weyerhaeuser's employees would carry asbestos fibers home on their clothing, depositing asbestos fibers in their cars and homes, all while subjecting their family members to the same risks associated with asbestos in the workplace. As such, Weyerhaeuser had notice of the risks associated with environmental and take-home exposure to asbestos and was therefore negligent in failing to warn its employees of the risks and in failing to prevent its facility from polluting the air in the community.

**D.**  **Weyerhaeuser Had Knowledge of Its Interference with Elvira Kilty's Common Public Right.**

As discussed above, a nuisance may be intentional "when the defendant, through ill will or malice, intends to cause the interference or if the defendant, without any desire to cause harm, nonetheless has knowledge that his otherwise legal enterprise is causing harm or is substantially certain to cause the invasion at issue." *Milwaukee*, 277 Wis. 2d at 663, 691 N.W.2d at 672 (citing *Vogel v. Grant-Lafayette Elec. Coop.*, 201 Wis. 2d 416, 430-31, 548 N.W.2d 829 (1996)). Here, Plaintiffs do not allege that Weyerhaeuser intentionally released unsafe levels of asbestos into the Marshfield community for the purpose of interfering with a common public right. Thus, the remainder of Plaintiffs' examination of intentional nuisance will focus on whether Weyerhaeuser, without any desire to cause harm, nonetheless had knowledge that it was interfering with a common public right. "It is the knowledge that the actor has at the time he acts or fails to act that determines whether the invasion resulting from his conduct is intentional or unintentional." Restatement (Second) of Torts § 825 cmt. c.

Weyerhaeuser had knowledge that it was polluting the atmosphere in Marshfield with asbestos fibers from its Marshfield plant. Weyerhaeuser knew or should have known that this pollution was an unreasonable interference with a right common to the general public to clean air, public health, and public safety. Weyerhaeuser also knew or should have known of the risks associated exposures to asbestos fibers in the plant. RCSPFF ¶162, Anderson Dep. 6/1/2015, at 115:10-127:6 (discussing different studies of asbestos in communities in the 1960s). It was foreseeable that its employees' clothing would become contaminated with asbestos fibers, which would then be brought into the homes of its employees, exposing the employee's family members to asbestos. As such, Weyerhaeuser intentionally created a public nuisance.

## V.  PLAINTIFFS' AMENDED COMPLAINT PROPERLY ALLEGES CLAIMS FOR WHICH PUNITIVE DAMAGES MAY BE GRANTED.

This Court previously ruled on this exact issue, as briefed in the earlier Marshfield cases, "deny[ing] defendant's [Weyerhaeuser's] motion [for summary judgment] with respect to plaintiffs' punitive damages claim." *Boyer v. Weyerhaeuser Company*, No. 14-cv-286-wmc, 2016 WL 705233, at *25 n.19 (W.D. Wis. Feb. 19, 2016).  The facts upon which plaintiffs' claims for punitive damages in the instant action are substantially similar to the factual bases in *Boyer* and the other earlier Marshfield cases.

A plaintiff may recover punitive damages "if evidence is submitted showing that the defendant acted maliciously toward the plaintiff or in an intentional disregard of" the plaintiff's rights.  Wis. Stat. § 895.043(3).  The Wisconsin Supreme Court recently permitted a plaintiff to proceed on a punitive damages claim against a defendant where there was evidence that:

> [t]he asbestos-coated steam pipes were on all four floors at Milprint. The Milprint workers were not advised to wear protective gear and no safety warnings or instructions about asbestos were given until sometime after 1985. The asbestos was never encapsulated and remained a subject of union bargaining discussions until the plant closed. [Plaintiff's] witnesses did not observe abatement work, involving the use of special protective measures, until 1989.

*Calewarts v. CR Meyer & Sons Co.*, 363 Wis. 2d 654, ¶73, 862 N.W.2d 902 (2015), attached hereto as **Exhibit A**.[3]

---

[3] Wisconsin Statute Section 809.23(3) states the following regarding the citation of unpublished opinions:

> (a) An unpublished opinion may not be cited in any court of this state as precedent or authority, except to support a claim of claim preclusion, issue preclusion, or the law of the case, and except as provided in par. (b).

> (b) In addition to the purposes specified in par. (a), an unpublished opinion issued on or after July 1, 2009, that is authored by a member of a three-judge panel or by a single judge under s. 752.31 (2) may be cited for its persuasive value. A per curiam opinion, memorandum opinion, summary disposition order, or other order is not an authored opinion for purposes of this subsection. Because an unpublished opinion cited for its persuasive value is not precedent, it is not binding on any court of this state. A court need not distinguish or otherwise discuss an unpublished opinion and a party has no duty to research or cite it.

Here, the evidence will demonstrate that Weyerhaeuser had notice of the emissions of asbestos-containing mineral core dust into the Marshfield community.  The emissions from the core mill dust collection systems were visible to management in the 1950s and 1960s and the Kaylo booth in detail was a direct daily emission.  Dep. W. Haeni.  The community resident complaints began in the 1950s on the legal department time line.  Specifically, Weyerhaeuser was aware of the risks of exposure to younger persons living near, but not working in, the plant, the need for proper control of the factory effluents containing asbestos waste, and the need to protect the community air.  Weyerhaeuser affirmatively acted to cause such emissions contaminating the air in Marshfield.  The evidence will also demonstrate that the risk associated with household exposures was foreseeable.  Weyerhaeuser failed to warn its employees of the risk of household exposures.  Additionally, Weyerhaeuser had knowledge that it was interfering with the use and enjoyment of land or a common public right and continued to ignore this interference.  Therefore, Weyerhaeuser acted with intentional disregard of the rights of Decedent and the public.

## VI.   PUBLIC POLICY DOES NOT FAVOR DISMISSAL OF PLAINTIFFS CLAIMS.

Weyerhaeuser argues that public policy favors dismissal of Plaintiffs' claims.  As cited by Weyerhaeuser, Wisconsin courts use six public policy factors: "(1) [the] injury is too remote from the negligence; . . . (2) the injury is wholly out of proportion to the culpability of the negligent tortfeasor; . . . (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; . . . (4) . . . allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; . . . (5) [to allow recovery] would open the

---

(c) A party citing an unpublished opinion shall file and serve a copy of the opinion with the brief or other paper in which the opinion is cited.

Wis. Stat. 809.23(3).

way for fraudulent claims; or (6) to allow recovery would enter a field that has no sensible or just stopping point." *Butler v. Advanced Drainage Sys.,* 294 Wis. 2d 397, 412 (2006) (citation omitted).

Importantly to the rejecting the public policy argument are the restrictions which this court has judicially imposed on the claims for community emissions and take home exposures. The court has restricted the claims for community exposures to living for at least one year within 1.25 miles of the Marshfield facility.  Household exposures are allowed only if the family member had a substantial workplace exposure. These limitations resolve the major concerns of potentially unlimited and overly burdensome litigation.

Wisconsin public policy in this area is well-established by the statutes and regulations cited in Plaintiffs pleadings, including Wisconsin Department of Natural Resources (DNR) air quality standards.   Compl. at ¶58(q).   The standards prohibit visible emissions into the community air.  The Complaint alleges that "visible emissions" occurred.  Compl. at ¶45(m). Weyerhaeuser does not contend the DNR standards are legally inapplicable.

In addition, Wisconsin courts normally defer taking up the issue of whether public policy justifies a non-liability finding until a full factual record has been developed and a jury has been allowed to make a negligence determination.  *See Thomas ex rel. Gramling v. Mallett*, 285 Wis. 2d 236, 323 & n.54 (2005) (noting that "as with the constitutional arguments, [this court] expresses no opinion on the dissent's analysis, except to acknowledge that this court retains the ability to limit liability based on public policy factors but rarely invokes this power before a finding of negligence has occurred.").  As the court stated in *Alvarado v. Sersch*, 262 Wis. 2d 74, 355 (2003):

> In most cases, the better practice is to submit the case to the jury before determining whether the public policy considerations

> preclude liability. Only in those cases where the facts are simple to
> ascertain and the public policy questions have been fully presented
> may a court review public policy and preclude liability before trial.

This case should be submitted to a jury to decide the facts before public policy is considered.

Weyerhaeuser only mentions one of the six public policy factors, claiming with little evidence or argument that there is no just and sensible stopping point.   Contrary to Weyerhaeuser's claim, an obvious just and sensible stopping point exists:  Weyerhaeuser is alleged to be liable only to persons who are diagnosed with life-threatening asbestos-related disease.  As with any other tort care, Weyerhaeuser's liability is only claimed for negligence in causing asbestos-related disease.  Further this court has imposed restrictions on the permissible exposure evidence mentioned above.

As for the other five factors, when the pleadings are construed in the light most favorable to Plaintiffs, each factor supports Plaintiffs' claims.  First, the injury is not at all remote from the conduct.  Asbestos-related disease is a predictable consequence of releasing large quantities of asbestos into the community as set forth in allegations of the complaints made about scientific knowledge of asbestos-related disease caused by community exposure.  Second, the injury is not out of proportion to the culpability:  asbestos has long been known to cause malignant disease, the injuries the plaintiffs in this case possess.   Third, it is not "highly extraordinary" that releasing asbestos in proscribed quantities into the community would cause asbestos-related disease.  The result was predictable.  Fourth, it is not unreasonable to charge Weyerhaeuser for the damage Weyerhaeuser foreseeably caused by releasing asbestos into the community – this is a fundamental principle of Wisconsin negligence law.  Fifth, fraudulent claims are not at risk, because plaintiffs will have to demonstrate some asbestos-related disease and that they resided in the community at the time of Weyerhaeuser's emissions.

## CONCLUSION

WHERFORE, for the reasons stated herein, Plaintiffs respectfully request that this Court deny Defendant Weyerhaeuser Company's Motion for Summary Judgment.

DATED:  March 9, 2018

Respectfully submitted,

ATTORNEY FOR PLAINTIFF

/s/Meredith K. Clark_____
John E. Herrick
Nathan D. Finch
Meredith K. Clark
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29264
(843) 216-9000

## <u>CERTIFICATE OF FILING</u>

I hereby certify that on March 9, 2018, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

ATTORNEY FOR PLAINTIFF

/s/Meredith K. Clark_____
Meredith K. Clark
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29264
(843)216-9000