## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

**This Document Relates to:**

| | |
|---|---|
| Pamela Kilty v. Weyerhaeuser Company, et al. | **CASE NO. 3:16-CV-000515** |
| Scott Spatz v. Weyerhaeuser Company, et al. | **CASE NO. 3:16-CV-000726** |

## WEYERHAEUSER COMPANY'S MOTION TO
## STRIKE IMPROPER SUMMARY JUDGMENT EVIDENCE

Plaintiffs are relying on inadmissible evidence in their responses to Weyerhaeuser Company's ("Weyerhaeuser") summary judgment motion that should be stricken and disregarded. "Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The proponent of evidence bears the burden of proving that it is admissible or will take admissible form at trial. *See Nichols v. Schilling*, Case No. 10-CV-64, 2011 WL 1630981, at *2 (E.D. Wis. Apr. 29, 2011).

The following evidence is inadmissible and should be stricken from the summary judgment record:

## I.   The Court Should Once Again Strike the Deposition of Elwood Schiller because it Remains Inadmissible Hearsay without Exception.

Plaintiffs cited the 1997 deposition of Elwood Schiller taken in the *Stini v. Owens Corning Fiberglas* case as evidence supporting their proposed findings of fact and responses to Weyerhaeuser's motion for summary judgment. (*See* Dkt. 209-*Kilty* & Dkt. 158-*Spatz*, PAFF at ¶¶ 62, 78–81, and 97; Dkt. 211-*Kilty*, Opp. Br. at 29–30). The plaintiffs in the previous Marshfield cases also cited Mr. Schiller's 1997 deposition as evidence in response to Weyerhaeuser's motion for summary judgment in those cases. Weyerhaeuser moved to strike Mr. Schiller's deposition in the previous cases because Mr. Schiller is deceased and because

Weyerhaeuser was not present at his deposition, not a party to that legal action, and was not provided an opportunity to examine him.  (Dkt. 227-*Kilty* & Dkt. 180-*Spatz*, Schiller 9 July 1997 Dep. at 2; *Stini* Docket, attached as Exhibit A); *Boyer v. Weyerhaeuser*, No. 3:14-cv-00186-wmc, 2016 WL 705233, at *4 (W.D. Wis. Feb. 19, 2016) [hereinafter *Boyer I*].  Recognizing that the Seventh Circuit "has applied [Rule 804] in a straightforward fashion," this Court granted Weyerhaeuser's motion and held Mr. Schiller's deposition testimony is inadmissible.  *Id.*

None of the underlying facts have changed, and the Court should once again strike Mr. Schiller's deposition from the summary judgment record.  It is inadmissible hearsay without any exception.  *See United States v. Sklena*, 692 F.3d 725, 730–31 (7th Cir. 2012) ("[I]n order for Rule 804(b)(1)'s exception to apply, the hearsay testimony at issue must meet the criteria spelled out in the rule. That is, the party against whom the evidence is being offered must have been involved in the earlier 'trial, hearing, or lawful deposition,' and that party must have had an opportunity as well as a similar motive to develop the testimony at the prior proceeding.").

Federal Rule of Civil Procedure 56(c) requires that Plaintiffs support their opposition to Weyerhaeuser's motion for summary judgment with admissible evidence.  While depositions taken in previous cases may be considered for purposes of a motion for summary judgment as could an affidavit, the deposition testimony must still comply with Rule 56. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014) (noting that "the deposition must satisfy Rule 56's requirements for an affidavit or declaration—i.e., the testimony [must be] based on personal knowledge and sets out facts that would be admissible at trial, and the deponent is competent to testify on these matters"). Unlike here, *Casino Queen* involved prior depositions initially challenged under Rule 32(a)(8) where the deponent was still available, *id.*, not under

Rule 32(a)(1), requiring that a party be present or represented at the taking of the deposition in order for the deposition to be used against a party.

It is well established that a "party may not rely upon inadmissible hearsay to oppose a motion for summary judgment." *Gunville*, 583 F.3d at 985. Accordingly, under Rules 32(a)(1) and 56(c), the Court should once again exclude Mr. Schiller's deposition as inadmissible hearsay, strike it from the record, and disregard Plaintiffs' citations to it.

## II.     The Court Should Strike the Improperly Disclosed Affidavits of Plaintiffs' Expert Dr. Henry Anderson.

In response to Weyerhaeuser's motion for summary judgment, Plaintiffs submitted two affidavits executed by their designated expert witness Dr. Henry Anderson in 2010 and 2011 in other, unrelated cases. (*See* Dkts. 207, 208-*Kilty* & Dkts. 160, 161-*Spatz*). Neither the affidavits nor their contents were disclosed in discovery – not with Dr. Anderson's Rule 26 reports, not in response to Weyerhaeuser's subpoena for documents related to his opinions, not at or before his two-day deposition, and not before discovery closed on March 1, 2018. These affidavits are improper, untimely opinions, and should be stricken because they violate both this Court's Pre-trial Conference Order and the Federal Rules of Civil Procedure, caused unfair prejudice to Weyerhaeuser, and their late disclosure is not otherwise substantially justified.

Federal Rule of Civil Procedure 26(a)(2)(B)(i) establishes that an expert must submit, as part of his report, "a complete statement of all opinions the witness will express and *the basis and reasons for them*." (Emphasis added). *See also Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 934 (N.D. Ill. 2008) ("Expert reports must disclose how and why an expert reached the conclusions presented, and not merely the result."); *Chappel v. SBC-Ameritech*, 2007 U.S. Dist. LEXIS 51133, at *7–8 (N.D. Ill. July 13, 2007) (referring to the basis and reasons as "the very heart of an expert disclosure"); *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 211 (D.N.J.

2001) ("[T]he report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions."). Likewise, a plaintiff is not allowed "to cure deficient expert reports by supplementing them with later deposition testimony." *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008). Rule 26(a)(2) was designed "to provide notice to opposing counsel -- before the deposition -- as to what the expert witness will testify." *Id.*

This Court, in its Pre-trial Conference Order, directed the parties that all disclosures must comply with Rule 26, and that any supplementation was "limited to matters raised in an expert's first report, must be in writing and must be served not later than five calendar days before the expert's deposition, or before the general discovery cutoff if no one deposes the expert." (Dkt. 51-*Kilty* & Dkt. 41-*Spatz*, August 11, 2017 Order at 1–2). The Court also cautioned the parties that "[f]ailure to comply with these deadlines and procedures could result in the court striking the testimony of a party's experts pursuant to Rule 37." *Id.*; *see Ruhland v. Walter Kidde Portable Equip.*, 179 F.R.D. 246, 250 (W.D. Wis. 1998) (stating the importance of adherence to a pretrial order with almost identical wording); *Rushing v. Kansas City Southern Ry.*, 185 F.3d 496, 508 (5th Cir. 1999) ("[A] party who ignores any case-management deadline does so at his own peril.").

Plaintiffs have had months to disclose Dr. Anderson's opinions. It cannot be reasonably disputed that Plaintiffs' unilateral disclosure of eight-year-old affidavits – four months after the November 2017 disclosure deadline and after the close of discovery – violates the Court's scheduling order and the Rules of Civil Procedure.

Rule 37(c)(1) establishes that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

4

*substantially justified* or is *harmless*." Fed. R. Civ. P. 37 (emphasis added). The consequences of failure to comply with Rule 26 are "automatic and mandatory exclusion . . . of the omitted evidence" unless the party can prove such failure falls under the "substantially justified" or "harmless" standard. *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 825 (7th Cir. 2010) (citation and internal quotation marks omitted).

Plaintiffs never sought leave to disclose these additional reports, and their failure was not harmless. Weyerhaeuser did not have the opportunity to examine Dr. Anderson about the opinions in the affidavits and cannot do so now. The affidavits are 28 pages combined and one attaches an additional 14-page list of "reliance materials" with nearly 300 documents listed (see Dkt. 208-*Kilty* & 161-*Spatz*). At this point, in the middle of summary judgment briefing, it is impractical, if not impossible, for counsel to fully examine these affidavits and the materials they cite, or prepare any sort of meaningful response.

The affidavits were not timely disclosed. Accordingly, exclusion is "automatic and mandatory" absent a showing by Plaintiffs that their discovery violation is substantially justified or harmless, which they cannot do. Accordingly, the Court should strike the affidavits from the record.

## III. The Court Should Strike the Improper Declarations of Richard Luther and Charles Reno Submitted in Violation of this Court's Orders.

Plaintiffs are relying on declarations signed by Richard Luther and Charles Reno to oppose Weyerhaeuser's summary judgment motion. Neither the declarations nor their contents had previously been disclosed. Further, the Court excluded Mr. Luther and Mr. Reno as witnesses because Plaintiffs failed to properly or timely disclose them. (*See* Dkt.199-*Kilty* & Dkt. 151-*Spatz*, March 7, 2018 Order). The improper declarations are cited throughout Plaintiffs' factual statement and in Plaintiffs' response to Weyerhaeuser's proposed facts, and in many

instances, are Plaintiffs' only cited support.  *See, e.g.*, Dkt. 209-*Kilty* PAFF ¶¶ 3, 4, 20, 30-31, 33, 45, & 124; Dkt. 158-*Spatz* PAFF ¶¶ 20, 30-31, 33, 45, 118-120, & 123.  Plaintiffs' back-door attempt to use undisclosed, one-sided testimony from excluded witnesses violates the Rules and this Court's Orders. Accordingly, the Court should strike the declarations from the record and award appropriate sanctions pursuant to Rule 37(b) and (c).

A. <u>Background</u>:

Plaintiffs' household exposure claims are premised on allegations that Decedents were exposed to asbestos in their home from work clothing of a family member.  (Dkt. 210-*Kilty*, PRSPFF ¶53 & Dkt. 162-*Spatz*, PRSPFF ¶48).  For these claims to survive, Plaintiffs must put forth evidence that the "family member's work involved significant, ongoing exposure to asbestos" while living with Decedent for a significant period of time. *See Boyer I*, 2016 WL 705233 at *48, 50 (determining that plaintiff Treutel failed to put forth evidence of "significant, non-occupational exposure" even though her daughter worked in the mineral core department for at least one summer). The details of Decedent's family members' work at the plant, when and how long they worked there, and what they did, are therefore critical.

- Plaintiffs' Complaints are silent as to the identity of the family members through whom Decedents were allegedly exposed to asbestos.  (*See* Dkt. 39-*Kilty* at ¶13 & Dkt. 28-*Spatz* at ¶13).

- On October 31, 2017,[1] Plaintiffs served Rule 26 Initial Disclosures identifying 7 individuals in *Kilty* and 6 individuals in *Spatz* as co-workers and persons with discoverable information regarding Decedents' claims. (Dkt. 59-*Kilty*, Pls.' Initial

---

[1] Plaintiffs' Rule 26 Initial Disclosures were due on August 25, 2017. (Fourteen days after the Rule 26(f) conference on August 11, 2017). Plaintiffs finally served their initial disclosures two months later after multiple requests from Weyerhaeuser's counsel.

Disclosures at 1-2; Dkt. 48-*Spatz* – Pl.'s Initial Disclosures at 1-2.) Neither Mr. Luther nor Mr. Reno were listed among these individuals.

- Plaintiffs' Initial Disclosures also attached two charts: (1) Chart A - "Weyerhaeuser Siteworkers" – including more than 118 names of individuals with some unspecified knowledge of 23 generic topics. (*See* Dkt. 59-*Kilty*, Pls.' Initial Discl. at 2; Ex. A, Chart A); and (2) Chart B - "Weyerhaeuser Company Witnesses" - including more than 110 names of individuals with some unspecified knowledge of 16 generic topics. (*See* Dkt. 59-*Kilty*, Pls.' Initial Discl. at 2-3; Ex. B, Chart B.)  The individuals on these charts were not identified as persons with knowledge of Plaintiffs' specific claims in these cases. In fact, these lists were provided by Plaintiffs' counsel in the previous cases.    Mr. Luther and Mr. Reno are among the names listed as Weyerhaeuser Siteworkers on Chart A.

- On September 19, 2017, Weyerhaeuser propounded discovery on Plaintiffs and requested, among other things, the facts and details regarding Plaintiffs' alleged household exposure, and the identity of individuals with knowledge of Plaintiffs' exposures and the substance of their knowledge.

- Plaintiffs' initial November 2, 2017 responses did not identity a single witness other than the named Plaintiffs.  (Dkts. 174-2-*Kilty* and 128-2-*Spatz*, Pl's Resp, dated Nov. 2, 2017 at Interrog. Nos. 13, 15, & 18.)  Instead, the responses referred to Plaintiffs' Rule 26 Initial disclosures.  (*Id*.).

- On November 8, 2017, Weyerhaeuser sent a good faith letter to Plaintiffs' counsel, identifying the deficiencies in Plaintiffs' discovery responses, including the failure to identify witnesses and failure to disclose the facts and details of Plaintiffs' claims and

exposures.  (*See* Exs. B and C, Weyerhaeuser's Nov. 8, 2017 Good Faith Letters).[2] The

letter stated:

> Given the upcoming expert discovery and dispositive motion deadlines, and
> the fact that Plaintiff has had months to gather the requested information,
> Weyerhaeuser requests that Plaintiff supplement the responses as soon as
> possible, but no later than close of business, November 15, 2017.
> (*Id*. at 1)

- Weyerhaeuser's letter specifically requested Plaintiffs supplement their response to

  discovery requests regarding Plaintiffs' household exposure claims, including

  Interrogatory No. 12, stating:

  > With regard to the alleged household exposure, Plaintiffs response states that
  > Decedent was exposed to asbestos "at his home from his father's clothing"
  > and identifies Joseph Spatz, Sr. as the source. The response does not,
  > however, state how the exposure occurred, the specific location of the
  > exposure, or the years of the exposure. For example, **Plaintiff must provide
  > details regarding how, where, and when Decedent was allegedly exposed
  > to asbestos from Joseph Spatz, Sr.'s work clothes** – in what residence(s) did
  > the exposure occur; did Decedent launder Joseph Spatz, Sr.'s work clothes, or
  > is exposure alleged in some other way; what years did this exposure occur;
  > etc. **This information is critical to Weyerhaeuser's evaluation and defense
  > of this matter**. Please supplement accordingly.
  > (*Id*. at 1-2) (emphasis added).

- The good faith letter also requested Plaintiffs supplement their response to Interrogatory

  No. 13, in which Plaintiffs referred to their Responses in Interrogatories 12, 14, and 15,

  stating:

  > Plaintiff failed to identify any witnesses in Response to 12, 14, or 15. Please
  > supplement this response with the identity of any witness with knowledge
  > regarding Decedent's specific alleged household exposure, and the substance
  > of the witnesses' knowledge.
  > (*Id*. at 2).

- Further, the letter made clear that Plaintiffs' generic Rule 26 disclosures were

  insufficient:

---

[2] The following quotes are from the *Spatz* letter, but the substance of the *Kilty* letter is essentially the same.

Plaintiff's response references the "family member listed above who contributed to household exposures" and then cites Plaintiff's Rule 26(a)(1) Initial Disclosures. Plaintiff's Initial Disclosures identify more than 110 individuals as "Weyerhaeuser Company" witnesses with unspecified knowledge of 16 generic topics. . . . The disclosures also identify approximately 115 individuals that are "Weyerhaeuser Site Workers" with unspecified information about 23 generic topics. . . . **Such broad, non-case-specific information is non-responsive and unworkable. This case has been on file for more than a year. Plaintiff has had ample time to identify and narrow the witness list. Please narrow Plaintiff's witness list to those individuals with information relevant to Plaintiff's specific claims, and include the specific, relevant information each individual has.**

(*Id.* at 2) (emphasis added).

- In response to the good faith letter, Plaintiffs supplemented their responses and identified 8 people in the *Kilty* matter and 6 individuals in the *Spatz* matter. (Dkts. 174-3-*Kilty* and 128-3-*Spatz*, Pls.' Supp. Resp. dated Nov. 20, 2017 at Interrog. No. 13.) **Luther and Reno are <u>not</u> among the individuals identified**.

*Spatz*

- In the *Spatz* case, the household exposure claims are based solely on Decedents' father, Joseph Spatz, Sr.'s work at the Marshfield plant. (Dkt. 162-*Spatz*, PRSPFF ¶48). Joseph Spatz, Sr. passed away in 1973, the year before Plaintiff was born. (Dkt. 162-*Spatz*, PRSPFF ¶50).

- Weyerhaeuser was unable to locate any employment records related to Joseph Spatz, Sr.'s employment. (Dkt. 162-*Spatz*, PRSPFF ¶55).

- Plaintiff Scott Spatz was deposed and testified he has no personal knowledge of Joseph Spatz, Sr.'s work at the Marshfield plant. (Dkt. 162-*Spatz*, PRSPFF ¶50).

- Decedent's sister, Caroline Spatz, was also deposed and testified that she has no personal knowledge of Joseph Spatz, Sr.'s work at the plant. (Dkt. 162-*Spatz*, PRSPFF ¶51). She could only offer that he started working at the plant sometime after she was born in 1942,

but did not know when he started or when he retired. (*Id.*).

- The individuals Plaintiff identified as persons "with knowledge" of Decedent's exposure to asbestos were deposed between February 5 and 8, 2018. None of them had any knowledge of Joseph Spatz, Sr.'s work at the plant. (*See* Dkt. 162-*Spatz*, PRSPFF ¶53).

- Plaintiff did not supplement his responses to Weyerhaeuser's discovery requests after November 21, 2017. Discovery closed on March 1, 2018.

*Kilty*

- In the *Kilty case,* the household exposure claims are based on Decedent's sons:  Gary Kilty (deceased); William "Bill" Kilty; Dave Kilty; and James "Jim" Kilty.  (Dkt. 210-*Kilty*, PRSPFF ¶50).

- Plaintiffs were deposed on December 7, 2017 (Dkt. 210-*Kilty*, PRSPFF ¶10).  None had personal knowledge of Gary Kilty's work at the plant. (Dkt. 210-*Kilty*, PRSPFF ¶58).

- The individuals Plaintiffs identified as persons "with knowledge" of Decedent's exposure to asbestos were deposed between February 5 and 8, 2018.

- One of the witnesses, William Haeni, was Gary Kilty's supervisor in the detail department.  Mr. Haeni testified that he had no recollection of Gary Kilty operating a saw that cut mineral core, and the only thing he could recall Gary Kilty doing was installing molding in the detail department. (Dkt. 210-*Kilty*, PRSPFF ¶¶ 59-61).

- None of the other witnesses had personal knowledge of Gary's specific duties at the plant during the relevant time period.

- Plaintiffs did not supplement their responses to Weyerhaeuser's discovery requests after November 21, 2017. Discovery closed on March 1, 2018.

***The Court excluded Mr. Luther and Mr. Reno and sanctioned Plaintiffs.***

- Pursuant to the scheduling order, on February 16, 2018 Weyerhaeuser filed its motions for summary judgment, based in part on the fact that Plaintiffs have put forth no evidence supporting their household exposure claims. (*See* Dkt. 172-*Kilty* at III; Dkt.126-*Spatz* at II).

- In particular, Weyerhaeuser argued that Plaintiffs have no information that either Joseph Spatz, Sr. or Gary Kilty (or any other Kilty family member) worked with asbestos-containing mineral core, much less that they worked with such materials for a significant time as required by the Court.

- On February 28, 2018, Plaintiffs filed a motion for leave to take the depositions of Mr. Luther and Mr. Reno after the close of discovery. (Dkt. 192- *Kilty* & Dkt. 144-*Spatz*). Notably, Plaintiffs' counsel was in possession of both declarations at this time, but did not disclose them.

- On March 7, 2018, the Court denied Plaintiffs' motion to depose Mr. Luther and Mr. Reno outside the discovery period and ruled that they had not been disclosed in accordance with the Rules. The Court held that Plaintiffs did not "properly disclose the identities of these two witnesses to defendants in a fair, timely or useable fashion" but rather "waited until the last minute to attempt to squeeze in these depositions." (Dkt. 199-*Kilty; * Dkt. 151-*Spatz*). The Court ruled that "[d]iscovery is over, period," and that the late disclosure "violates the preliminary pretrial conference order in each case and violates this court's December 22, 2017 text-only order." (*Id*.). Plaintiffs were sanctioned pursuant to Rule 37.

- Two days later, on March 9, 2018, Plaintiffs filed the declarations in support of their

opposition to Weyerhaeuser's motions for summary judgment. (Dkts. 229, 230-*Kilty;* Dkts. 182, 183-*Spatz*).  Neither the declarations nor their contents had been produced in discovery.

- The declarations purport to provide information regarding Joseph Spatz, Sr. and Gary Kilty's work with or around mineral core at the Marshfield plant.  (*See id.*).  The Luther declaration is the only "evidence" cited by Plaintiff to support their claim that Joseph Spatz Sr. worked with or around asbestos-containing materials. (*e.g.,* Dkt. 158-*Spatz* at ¶¶ 118-120).  Plaintiffs rely on Mr. Reno's declaration to try to support their claim that Gary Kilty "was contaminated" with asbestos-containing mineral core dust. (*e.g.,* Dkt. 209-*Kilty* at ¶¶ 125, 127).

- Plaintiffs cited the declarations as the only source of support for multiple assertions related to non-occupational exposure claims in both *Spatz* and *Kilty*. (*See* Plaintiffs' Proposed Findings of Fact*,* Dkt. 209-*Kilty* at ¶¶ 3, 4, 20, 30, 31, 33, 45, 124, 125; Dkt. 158-*Spatz* at ¶¶ 3, 4, 20, 30, 31, 33, 45, 118, 119, 120, 123).

B. <u>Plaintiffs violated the Federal Rules of Civil Procedure and this Court's Orders by disclosing and relying on the never-disclosed declarations of witnesses the Court excluded</u>.

Plaintiffs' use of the Luther and Reno declarations is just the sort of gamesmanship Rule 26 is intended to avoid.  Plaintiffs failed to identify either witness in Rule 26 disclosures or responses to discovery as a person that "may have knowledge regarding [Decedent's] exposure(s) to asbestos." When specifically asked to identify the individuals that had knowledge of Decedent's exposure claims, Plaintiffs identified multiple other individuals, but <u>not</u> Mr. Reno or Mr. Luther.

Plaintiffs' counsel refused to disclose their testimony despite numerous requests from defense counsel and in the face of this Court's December 22, 2017 Order. Moreover, by Plaintiffs' own admission, Plaintiffs were in contact with both Mr. Reno and Mr. Luther regarding these cases as early as November, 2017. (Dkt. 242-*Kilty* & Dkt. 200-*Spatz*, Pls.' Rule 72 Motion at 3-4). Even when Plaintiffs sought to depose Mr. Reno and Mr. Luther just before the close of discovery, they did not disclose the subject of the information these individuals had. Plaintiffs instead waited until *after* Weyerhaeuser filed its summary judgment motions, which identify the specific evidentiary deficiencies in Plaintiffs' case, and then manufactured the declarations to respond to the motion.  This is quintessential trial by ambush and precisely what Rule 26 is intended to avoid.  *Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc*., 2016 WL 7034074, at *2 (N.D.Ill., 2016) (citing Fed. R. Civ. P. 26(a)(1)(A)). (*See also* Dkts. 77-*Kilty* and 63-*Spatz*, Dec. 22, 2017 Order.).

If a party learns that the information disclosed or the response is "incomplete or incorrect and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing," the party must supplement the disclosure. Fed. R. Civ. P. 26(e)(1).  Plaintiffs made no such supplementation.

As this Court has already determined in these cases, merely including the name of a witness, buried in a list of several hundred other names, does not satisfy the disclosure requirement. (*See* Dkts. 77-*Kilty* and 63-*Spatz,* Dec. 22, 2017 Order; Dkts. 199-*Kilty* and 151-*Spatz,* March 7, 2018 Order).  "The Rule was never intended to allow material to be smuggled into a case inside a Trojan horse." *Physicians Healthsource*, 2016 WL 7034074, at *3. Despite the clear requirements of the Rules and "the hope that gamesmanship could be eliminated from

federal practice (or at least vastly curtailed), there continues to be a good deal of adherence to stealth or omission as the path to be followed." *Id*. at *2.

Here, despite being in contact with both witnesses since November 2017, and despite Weyerhaeuser's repeated requests that Plaintiffs identify individuals with knowledge of the Decedents' claimed exposures, Plaintiffs failed to disclose Mr. Luther or Mr. Reno as witnesses with knowledge of Plaintiffs' claims until filing their opposition to Weyerhaeuser's motion for summary judgment. And Plaintiffs did so in the face of this Court's Order excluding Luther and Reno as witnesses.   The declarations are improper, untimely, inadmissible, and should be stricken from the record.

C.   Plaintiffs' untimely disclosure was not substantially justified or "harmless."

Rule 37(c)(1) establishes that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was *substantially justified* or is *harmless*." Fed. R. Civ. P. 37 (emphasis added).  The consequences of failure to comply with Rule 26 are "automatic and mandatory exclusion . . . of the omitted evidence" unless the party can prove such failure falls under the "substantially justified" or "harmless" standard.  *Happel*, 602 F.3d at 825 (citation and internal quotation marks omitted). *See also David v. Caterpillar, Inc*., 324 F.3d 851, 856–57 (7th Cir. 2003).

On March 9, 2018, Plaintiffs disclosed these improper and untimely declarations for the first time in their response to Weyerhaeuser's motions for summary judgment – two days *after* the Court excluded Luther and Reno as witnesses. There is no justification for such conduct. And Plaintiffs cannot reasonably argue that the disclosure is harmless.  Plaintiffs rely on these affidavits to try and cure their evidentiary failings, pointing to the declarations to support their

household exposure claims with never-before-seen statements from undisclosed witnesses that Weyerhaeuser cannot cross-examine.

D. Conclusion:

The improper and untimely Luther and Reno declarations violate this Court's Orders, are not justified, and are not harmless. Accordingly, exclusion is "automatic and mandatory." The Court should strike the inadmissible declarations from the record, and provide any other relief it deems necessary pursuant to Rule 37.

**IV.   The Unauthenticated D. B. Allen Memorandum is Inadmissible Hearsay.**

The Court should strike the D. B. Allen memorandum from the summary judgment record because it is hearsay without exception, and Plaintiffs failed to properly authenticate it. (*See* Dkt. 206-1-*Kilty* & Dkt. 159-1-*Spatz*, Clark Aff. Ex. 1). The 32-page document, titled "Marshfield: An Environmental History," contains information related almost exclusively to environmental matters at the Marshfield plant, most of which have nothing to do with asbestos. *Id*. This Court previously ruled the memorandum was inadmissible for purposes of summary judgment because, on its own, the memorandum lacked proper authentication. *Boyer I*, 2016 WL 705233, at *2. It was not until the plaintiffs presented Mr. Allen's deposition testimony that this Court determined it could be authenticated and moved forward with considering its admissibility otherwise.[3] *Boyer v. Weyerhaeuser*, 14-cv-286-wmc, 2016 WL 2593984, at *3 (W.D. Wis. May 5, 2016) [hereinafter "*Boyer II*"]. Presented with Mr. Allen's authenticating deposition, the Court ruled on three categories of entries within the memorandum:

- "[S]tatements of other Weyerhaeuser employees, those statements also are not hearsay as statements of a party opponent under Rule 801(d)(2), either because of the status of the original employee or adoption by Allen." *Id*. at *3.

---

[3] Plaintiffs did not submit Mr. Allen's deposition anywhere in the record here.

- "[T]he document's statements as to what members of the community reported constitutes hearsay and cannot be introduced for the truth of the matter asserted — that there *were* emissions into the community." *Id.*

- "[C]ommunications and orders with regulators . . . may not be offered to prove the defendant was or was not in compliance with certain regulations." *Id.*

Weyerhaeuser maintains the entire memorandum is inadmissible,[4] and Plaintiffs cannot satisfy three threshold questions. First, Plaintiffs fail their burden of demonstrating evidence is admissible by submitting this hearsay without authenticating it or identifying hearsay exceptions for the entries they cite. *See Nichols*, 2011 WL 1630981, at \*2. Second, for the *Spatz* case, the memorandum and the entries from it cited by Plaintiffs are wholly irrelevant because it relates only to environmental issues and Mr. Spatz does not claim any community exposure. Third, the community exposure claims in *Kilty* are limited to 1955 to 1962. All but one of the entries referenced by Plaintiffs pertain to events allegedly taking place *after* 1962, and Plaintiffs provide no explanation to support their relevance. Accordingly, the Court should exclude the D.B. Allen memorandum as inadmissible and irrelevant.

A. The post-1962 entries are all inadmissible to show evidence of community contamination or exposure.

Multiple entries cited by Plaintiffs are inadmissible hearsay within hearsay because they cite statements of declarants who are purported "members of the community" or not identified, or pertain to "communications or orders with regulators":

---

[4] Even assuming the memorandum can be authenticated, it is nonetheless quintessential hearsay – an out of court statement offered by Plaintiffs to prove the truth of the statements therein, and does not fall under any exception to the rule against hearsay. Fed. R. Evid. 801(c). In fact, the Allen document contains multiple layers of hearsay. The document includes statements from other sources about statements purportedly made by members of the Marshfield community. Plaintiffs have not established that Mr. Allen is an unavailable witness. Neither the document nor the statements therein fall within any exception to the hearsay rule and therefore, the document must be excluded. *See Jordan v. Binns,* 712 F.3d 1123 (7th Cir. 2013) (noting that evidence consisting of multiple layers of hearsay requires an exception for each layer in order to be admissible).

- Plaintiffs reference an entry dated October 24, 1974. (Dkt. 209-*Kilty* & Dkt. 158-*Spatz*, PAFF ¶ 75). This entry is wholly irrelevant to Plaintiffs' claims because it relates to events almost twelve years after the relevant time period. In addition, it is also inadmissible because it purportedly relates to "communications . . . with regulators." *Boyer II*, 2016 WL 2593984, at *3. *See* Dkt. 206-1-*Kilty* & Dkt. 159-1-*Spatz* at 23.

- Plaintiffs cite a statement purportedly from a form submitted to the DNR in December 1974. (Dkt. 209-*Kilty* & Dkt. 158-*Spatz*, PAFF ¶ 107). This entry is wholly irrelevant to Plaintiffs' claims because it relates to events almost twelve years after the relevant time period. In addition, it is also inadmissible because it purportedly relates to "communications . . . with regulators." *Boyer II*, 2016 WL 2593984, at *3.

- Plaintiffs cite multiple entries that recount non-employee statements regarding post-1962 complaints. *See* Dkt. 209-*Kilty* & Dkt. 158-*Spatz*, PAFF ¶ 99 (Aug. 1967), ¶ 101 (June 1968), & ¶ 102 (Aug. 1969). Accordingly, the Court should strike these paragraphs from the summary judgment record because they are irrelevant to Plaintiffs' claims and hearsay within hearsay without exception. *Boyer II*, 2016 WL 2593984, at *3.

The remaining post-1962 paragraphs are inadmissible here to establish evidence supporting Plaintiffs' community exposure claims because they all post-date the relevant time period. *See* Dkt. 209-*Kilty* & Dkt. 158-*Spatz*, PAFF ¶ 100 (Dec. 1967); ¶ 103 (Dec. 1969); ¶ 104 (Sept. 1973); ¶ 105 (June 1974); ¶ 106 (Aug. 1975).

    B.   The only pre-1963 entry cited by Plaintiffs is inadmissible hearsay within hearsay.

Plaintiffs cite part of one entry from the D.B. Allen memorandum as proof of the matter stated therein. The entry from October 7, 1959 Plaintiffs cite reads as follows:

> \* <u>October 7, 1959</u> – Roddis writes to Cyclone Blow Pipe: "Our problem is still the heavy accumulation in the yards and the parking lot. At times the dusty condition at the ground level can be compared to falling snow. This is not what we had expected as a final condition."

(Dkt. 209-*Kilty* & Dkt. 158-*Spatz*, PAFF ¶ 54). On its face, this is hearsay upon hearsay upon hearsay.  Plaintiffs have not met their burden of establishing each layer as being admissible.  *See* Dkt. 206-1 at 2.  Further, the entry is irrelevant.  Plaintiffs admit the cyclones "were open wood dust collectors that collected wood waste to be burned in the powerhouse boilers."  (Dkt. 210-*Kilty*, PRSPFF ¶ 122).  In other words, this entry, which relates to cyclones and wood dust, has nothing to do with asbestos, and Plaintiffs have offered no evidence to suggest otherwise.  Accordingly, this entry on its own is not admissible to show evidence of asbestos contamination in the Marshfield community.

In short, none of the entries from the D.B. Allen memorandum cited in Plaintiffs' proposed statement of facts is admissible.  Accordingly, they should be struck from the summary judgment record.

Dated: March 23, 2018                    Respectfully submitted,

                                         By: /s/ Tanya D. Ellis
                                         Joshua J. Metcalf (MS Bar No. 100340)
                                         Tanya D. Ellis (MS Bar No. 101525)
                                         Mitch McGuffey (MS Bar No. 104986)
                                         T. Benton York (MS Bar No. 104445)
                                         FORMAN WATKINS & KRUTZ LLP
                                         210 East Capitol Street, Suite 2200
                                         Jackson, Mississippi 39201-2375
                                         Phone: (601) 960-8600
                                         Facsimile: (601) 960-8613
                                         Email: Joshua.Metcalf@formanwatkins.com
                                         Email: Tanya.Ellis@formanwatkins.com
                                         Email: Ruth.Maron@formanwatkins.com
                                         Email: Mitch.McGuffey@formanwatkins.com
                                         Email: Benton.York@formanwatkins.com

                                         *Counsel for Weyerhaeuser Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 23, 2018, these papers were filed with the Clerk of the Court for the United States District Court for the Western District of Wisconsin using the CM/ECF system, which will send notification of such filing upon all parties who have appeared.

/s/ Tanya D. Ellis
Tanya D. Ellis